Dean Charles RAY, Claimant-Appellant,

v.

GREAT WESTERN STAGE AND EQUIPMENT CO., Employer-Appellee,

and

The Travelers Insurance Company, Insurer-Appellee.

No. 24565.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1967.

Application to Transfer Denied May 8, 1967.

Robert C. Paden, Graham, Paden & Welch, Independence, for appellant.

Harold L. Lowenstein, Rogers, Field & Gentry, Kansas City, for appellees.

MAUGHMER, Commissioner.

We have here a claim for workmen's compensation benefits arising from injuries sustained by the employee on August 9, 1963, when the automobile in which he was traveling from his place of employment to his home was struck in the rear by an automobile driven by a third party. It was conceded that claimant, Dean Charles Ray, at the time of the accident, was an employee of the defendant employer, Great Western Stage and Equipment Company, which company was fully insured under the Act by the Travelers Insurance Company.

The sole issue heretofore litigated is whether or not the employee, on or about August 9, 1963, sustained an injury by accident which "arose out of and in the course of his employment". The Referee, after an extensive hearing, ruled that he did not. Upon review, the Industrial Commission (only two members sitting) held that he did. On appeal the circuit court held that he did not, reversed the Commission and entered judgment for the employer and its insurer. Claimant has appealed.

The employer Great Western Textiles which is actually a division of the Great Western Stage and Equipment Company, has offices at 1324 Grand Avenue, Kansas City, Missouri, and at all times herein mentioned was engaged in the manufacture and sale at wholesale of draperies and drapery fabrics in many midwestern states. Mr.

Ray's employment commenced about June 10, 1963, approximately two months prior to the accident. Prior to entry upon his employment he was interviewed by Mrs. E. L. Gossage, co-owner and manager at the textile division. He was then hired by her as a traveling salesman.

In his testimony claimant set forth his version of the terms of the employment. When all of his testimony is evaluated, his version of the terms of employment is actually no different from that of Mrs. Gossage, the employer. He said that Mrs. Gossage told him he "would travel on the road selling fabric to the accounts and opening new accounts for them", "that I would make $100 per week, plus one percent commission on sales that came in off the territory, plus $11.00 a day expenses * * *, plus automobile and credit card for maintenance of the automobile". He stated that he was assigned all of Missouri (except Greater Kansas City), Illinois, Iowa, and "I believe Indiana, Nebraska, Colorado and New Mexico". He said he was furnished a 1963 Chevrolet Bel Air station wagon and a Standard Oil Company automobile credit card. Claimant's attorney asked him this question:

"Q. Pay gas and oil for strictly the time you were on business purposes or on all gas and oil? A. *Only business purposes*". (Italics ours).

When the employee was not "on the road" he was expected to be in the Kansas City store or office. We quote further from the questions propounded by claimant's attorney and the responses:

"Q. Did you ever use your car on business during working hours while you were in Kansas City? A. Yes, sometimes I did.

"Q. Working out of the store there on Grand? A. Sometimes I did.

"Q. In what capacity? What would you do? A. Well, a couple of times I had to take drapery fabric out to a

lady's house so she would make the draperies up for us".

He stated that on one or two occasions he took a new salesman to a nursing home to get a contract signed, and that three or four times he took Mrs. Gossage to the hairdresser. Mr. Ray said that when he went to work he was given six sample cases of materials for exhibit to the trade and those sample cases at all times thereafter remained in the automobile he was using. It was his testimony that after the accident, which occurred on a Friday evening, he and his wife "went somewhere" that night, came home, put the children to bed and then "cleaned and pressed" the materials from the sample cases as he planned to go "on the road" the following Monday. However, on Saturday morning following the accident he worked at the office at least part of the day. He had never been instructed by Mrs. Gossage to do any such work at home. He was required to keep "territory books" which listed the names and addresses of potential customers and a statement as to their monthly purchases. It is not clear from the evidence that he ever made any such entries in these books as he made only one or two trips for the company. He also sent out post cards to prospective customers. He admitted that Mrs. Gossage never gave him any work to do at home, although he claimed to have addressed some post cards and made some entries in the territory books while he was at home.

Mrs. Gossage, by deposition, said Mr. Ray was to receive one percent commission with a guarantee of $100 per week, $11.00 per day expenses while on the road to cover the cost of meals and hotel rooms, an automobile and credit card for gas and oil when the car was in use for business purposes. She stated that he was furnished samples of their complete line and a brief case. She said Mr. Ray made only one or two trips into the territory, that she never directed him to clean and press the samples and did not know that he had done so until after the accident.

We now come to Friday, August 9, 1963, the date of the automobile accident. Claimant at the time resided at 7003 Garnett Street, Shawnee, Kansas. The office day ended at 5:00 p. m. and shortly thereafter Mr. Ray and Mr. Michael Kerns, a fellow employee, started for their homes in the company Chevrolet station wagon, with claimant driving. Mr. Kerns lived at 4407 Lloyd Street, Kansas City, Kansas. Kerns and Ray agreed that Kerns's residence was two or three miles distant from Ray's, but Kerns said it was "on the way". They had been slowed by traffic on the Southwest Trafficway at the time the Chevrolet was struck in the rear by an automobile driven by a third party. Mr. Kerns said that Mr. and Mrs. Gossage drove by a few minutes after the accident, were "flagged down" by Mr. Ray, who told them that neither he nor Kerns was hurt and the automobile had no serious damage. Mr. Kerns also worked as a salesman and said the Great Western Textiles had facilities on the second floor for "serging, pressing, completely revamping of fabrics and if they needed to be cleaned, they were sent out to be cleaned by the company". It would seem therefore that if Ray's samples needed pressing it could have been done at the office on Saturday, the day after the accident. There is no suggestion or contention made that Mrs. Gossage or any one in authority directed or requested claimant to take Mr. Kerns home or that they even knew he did so. There is no evidence that Mr. Ray was given any work to do at home or away from the office except while on trips into the sales territory. It is quite evident that claimant was not injured while on employer's premises or while entirely on the job. If, therefore, he is to prevail it must be because he comes within what is generally referred to as the "dual purpose" travel doctrine; that is, there existed not only a personal mission and purpose but also some employment objective.

The Referee found that the employee "failed to prove that he sustained an accident arising out of and in the course of his

employment" and denied compensation. Upon review, the Commission found that the employee "sustained an accident arising out of and in the course of his employment", resulting "in injury to the low back and aggravation of a pre-existing condition thereof". The Commission further stated: "We believe to be controlling the case of Corp v. Joplin Cement Company et al., Mo.Sup., 337 S.W.2d 252". The total award was made up of the following allowances:

| | |
|---|---|
| Medical aid not furnished by employer or insurer, | $1,288.60 |
| 14 and ⁹⁄₇ths weeks' healing period, at $47.50, | 685.37 |
| 40 weeks permanent partial disability at $42.50, | 1,700.00 |
| Total award, ............ | $3,673.97 |

Both parties appealed to the circuit court. The claimant appealed "only as to the insufficiency of the permanent, partial disability allowed and also as to the finding of a pre-existing herniated disc". The circuit court set aside the finding of the Industrial Commission and entered judgment for the employer and the insurer. The circuit court found and held: "That the award of the Industrial Commission is not supported by competent and substantial evidence on the whole record; that the Industrial Commission could not have reasonably made the findings and reached the results on a consideration of all the evidence". Claimant has timely appealed.

■ The burden is upon the employee to show that the accident "occurred in the course of and arose out of the employment" within the meaning of the Act. Mershon v. Mo. Public Service Corporation, 359 Mo. 257, 221 S.W.2d 165, 167; Sanderson v. Producers Commission Ass'n. et al., 360 Mo. 571, 229 S.W.2d 563, 566–7. However, we review the whole record in the light most favorable to the award of the Commission and if there is substantial evidence to support such allowance, we should affirm the action. Blair v. Armour and Company, a corporation, Mo.App., 306 S.W.2d 84, 88.

The function of the reviewing court is to determine if the award is supported by competent and substantial evidence on the whole record. It cannot substitute its judgment on evidence for that of the Commission, but it can set aside such decision if it is clearly contrary to the overwhelming weight of the evidence. Corp v. Joplin Cement Co., supra, syl. 5.

The Commission bottomed its award on the opinion in the case of Corp v. Joplin, supra. Claimant on appeal also relies upon Corp, but primarily upon Sanderson v. Producers Commission Ass'n., supra. We review those two cases and the opinion in Gingell v. Walters Contracting Corporation et al., Mo. App., 303 S.W.2d 683, written by Judge Cave of this court. All three of those cases recognize and apply the dual purpose travel doctrine as was enunciated by Judge Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183. This doctrine, in effect, is that if the work of the employee creates the necessity for the travel, he is in the course of his employment, even though he at the same time is serving some purpose of his own.

In Corp v. Joplin, supra, the employee died from injuries received in an automobile accident. He had been employed as an "insulator's helper". He had been working on a job in Winfield, Kansas, about 175 miles west of his home, which was just north of Joplin, Missouri. He was paid expenses for one trip to and from the job site, but usually came home each week-end at his own expense. On the day of the fatal accident, the employee left his home, located a few miles north of Joplin, to go to the company plant in Joplin. The purpose of the trip was to get his pay check and also to procure some building materials to take back to the job in Winfield on the following Monday. It was not necessary for him to personally pick up his pay check. It would have been mailed to him. The building material which he loaded in his automobile consisted of a substantial quantity of canvas and a load of sheeting. In the opinion (337 S.W.2d p. 256) the Supreme Court com-

mented: "The pertinent inquiry is whether employee Corp was directed by his employer to pick up the building materials and transport them to the job site in Winfield * * *". There was substantial evidence that Corp had previously carried supplies to the Winfield job in his automobile. The employer's general manager said that it was necessary to have those materials on the Winfield job and if Corp had not taken the canvas it would have to be sent by truck or rail. The Winfield job foreman's testimony tended to prove that either he or Mr. Corp's immediate superior instructed Mr. Corp to pick up those materials and take them to Winfield. He said that while Corp was not required to pick up and haul the materials, if an employee did not do what he was told, the employer would likely get someone who would. The facts in this case present the elements of the dual purpose doctrine. The employee's personal mission was to pick up his pay check, the business purpose was to pick up and load the building materials for transportation to the Winfield job site. The employer had directed him to do so. The loading of the materials and the transportation thereof were not for the employee's convenience nor was it a part of his personal work. It was rather for furtherance of the business of the employer. The appellate court allowed recovery, thereby reversing the Commission.

In the Sanderson case, supra, the Commission again denied benefits. The circuit court reversed and the Supreme Court affirmed the circuit court. The employee was fatally injured on January 14, 1948, after he had finished his day's work and while he was traveling to his home in his employer's automobile. When he was first employed as a hog buyer, there was "no talk about transportation at all". In the spring of 1946, he was placed in charge of employer's stations at Malta Bend and Sedalia. He drove daily to those points from Kansas City in an automobile belonging to and furnished by the employer. Those stations were closed in October, 1947. The employee continued to use the automobile in driving to and from his work at the stock yards and in making probably eight or ten trips into the country to locate marketable hogs and solicit their shipment to Kansas City. Employer paid for the oil and gasoline used by the employee in his operation of the automobile owned and furnished by the employer. Employer's manager said that Mr. Sanderson arrived for work at 6:30 or 7:00 o'clock (occasionally at 6 o'clock) which was "earlier than some of the sales staff in his department arrived on the job to get the preliminary duties of the day's work accomplished * * *". We set out two questions and answers from the examination of the company manager in Sanderson:

"Q. When he took the car to and from work, was that for any company purpose whatsoever? A. No, * * *.

"Q. When you permitted him to take this car home was part of that for his convenience in getting to work in the morning at that time? * * * A. Partly, yes, sir, because we allow that in other departments as well. * * *".

In Gingell v. Walters, supra, the Commission awarded benefits. Both the circuit court and this court approved the award. In this case the employee lived in Kansas City. His work was at Knobnoster, Missouri, approximately sixty miles from his home. He was a welder and had no duties to perform except at the work site. Under the union contract he was paid $3.20 per day "travel expense". That amount was paid to each workman. We quote in part from the opinion as follows:

"After the work had been cancelled on Wednesday morning, a number of employees were standing around in the office of the employer and Leo Kohl asked if anyone was going to Kansas City. Gingell replied that he was, and 'he (Kohl) asked me if I would pick up some tarpaulins at Kansas City and bring them back the next day, and I said I would.

'Q. He asked you to pick up these tarpaulins in Kansas City? A. Yes, either English Brothers or another place, I have forgotten now.

'Q. Did he instruct you as to how to pay for them? A. He told me to pick them up, and sign a ticket, one of them tickets with a construction company, it would be mailed by check, I guess, paid to them later on.

'Q. He told you to sign for them. A. Yes, * * *.

'Q. Do you know what they were to be for? A. To cover some machinery, the welders, you know, to keep from getting wet or to cover something on the job.'

"At about the same time, a Mr. Treu, an employee of Walters Company out of its New York office, stated that he wanted to return to New York that afternoon and asked Gingell if he would take his two bags to the airport in Kansas City and check them in his name, and Gingell consented to do so.

\* \* \* \* \* \*

"We think the same formula is applicable when an employee, in the course of his normal journey to and from work, performs some *concurrent service* for his employer, and becomes an exception to the general rule excluding off-premises going-and-coming journeys—such as going from his home to his place of employment or returning therefrom to his home. The question then becomes: *Was this mission of such character or importance that it would have necessitated a trip by someone if this employee had not been able or willing to handle it in combination with his homeward journey?* (Italics added).

"We conclude that the services requested by Mr. Kohl and Mr. Treu were of such a pressing need that had not Gingell consented to perform them, then some other person would have been required to make the trip for such purposes. That

being true the commission properly found that employee's injuries arose out of and in the course of his employment".

In those three cases (Corp, Sanderson and Gingell) it is not difficult to apply the dual purpose doctrine. Corp was directed to and did pick up materials for transportation to and use on the job site, not for his convenience, but to enable progress to continue on the job. Moreover, he had been specifically directed to do this very thing. Likewise in Gingell, the employer's foreman asked the employee to pick up some tarpaulins in Kansas City and bring them back to the job site. This task and the performance thereof were clearly business of the employer which employee had been specifically directed to undertake and carry out. In Sanderson, a closer question is presented, but there employee was required to be at work earlier than most of the others and his foreman said the purpose in permitting him to take the car home was partly to enable him to get to work earlier in the morning—a requirement specifically demanded by the employer. Furthermore, in this case it was conceded that the employer paid for the gas and oil in the operation of the automobile from the employee's home to the place of employment.

Claimant also invites our attention to Sylcox v. National Lead Co. et al., 225 Mo. App. 543, 38 S.W.2d 497. We quote briefly from that opinion (p. 500):

"In the case at bar the transportation to and from his home was furnished to plaintiff by his employer as a part of the consideration for his work. Such fact was solemnly pleaded in his petition, and his evidence tended to show it. There is therefore no occasion to speculate about plaintiff's right to have received transportation, for it was expressly contemplated by his contract of employment".

Section 287.020(6) V.A.M.S. provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of

and in the course of such employment', it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such service".

On the main question involved in the case before us we quote twice from Larson's Workmen's Compensation Law, Vol. 1.

Section 18.24:

"The mere fact that claimant is, while going to work, also carrying with him some of the paraphernalia of his employment does not, in itself, convert the trip into a part of the employment. For example, the mere fact that at the time of the accident the employee had with him some of the tools of his trade, such as a steamfitter's hard hat, a pocket rule, and a level, all belonging to the employer, does not make the accident compensable".

Continuing, Mr. Larson states there must be two purposes existing on the homeward trip if the dual purpose doctrine is to apply: the personal purpose of making a normal trip home, and the business purpose of reaching a second employment situs. He then states and we use his exact words:

Section 18.31, "Dual Purpose Doctrine applied to home work:

"Adherence to this methodical process of analysis in particular cases can help remove some of the uncertainty that attends the many familiar situations involving teachers who prepare lessons or correct papers at home, lawyers who take home briefs, salesmen who work on accounts at home, and newspapermen who polish up a bit of writing at home—all of whom might be tempted under a more vague rule to assert compensation coverage of all their movements to, from or around the house by virtue of some morsel of work carried around in their pockets".

We are told in 99 C.J.S. Workmen's Compensation § 209 page 681:

"* * * that an injury arises out of the employment when there is apparent to the rational mind, on consideration of all of the circumstances, a causal connection between the conditions under *which the work is required to be performed* and the resulting injury". (Italics ours).

In Trent v. Collin S. Tuttle & Co. Inc., et al., 20 A.D.2d 948, 249 N.Y.S.2d 140, 141, 142, the Supreme Court, Appellate Division New York, said this:

"It is urged that since claimant had left her home earlier than usual and was carrying with her a report which she had worked on at home on the previous evening, she was not merely going from her home to her place of employment but rather from one location where she had performed duties for her employer (her home) to another location where she would complete those duties (the office). If this argument were accepted, any time an employee performed even an occasional piece of work at home at his employer's direction or even with his employer's permission or knowledge express or implied the risks of travel to and from employment on such an occasion would be incidents of employment. Such a position is untenable. Rather it would seem that unless the employee's home is truly a second employment location in that more than occasional employment services are required to be rendered there (see Matter of Tiernan v. Potter, 281 App.Div. 787, 118 N.Y.S.2d 431) travel to and from work is not a risk of employment. *Here claimant on her own initiative and without her employer's knowledge chose to take the work home rather than complete it at her place of employment.* Such action alone does not create a second situs of employment". (Italics ours).

In the case before us we find no substantial evidence that (1) employer contracted to pay claimant's transportation costs from his home to the office; (2) claimant was

either to perform any part of his work at home or that his duties required him to do so; (3) that at the time of the accident claimant was in the performance of any duty which the employer requested, required or even knew was being performed at home. On the contrary, the testimony of both claimant and Mrs. Gossage is that under the contract the employer was to pay for gas and oil only for business trips; that employer provided for cleaning and renovating of samples at the office, and that employer did not even know that the employee had done any such work at home until after the accident when the employee so reported. The same comment applies to the addressing of postal cards and the making of entries in the "territory books". These activities are quite similar to school teachers grading papers at home, lawyers who take home briefs, salesmen who work on accounts at home and newspapermen who polish up a bit of writing at home, none of whom are covered, as stated by Larson, supra.

In our opinion the Industrial Commission could not have reasonably found that claimant's injury "arose out of and in the course of his employment". Therefore, the finding of the circuit court reversing the award of the Commission and entering judgment for the employer is, we believe, the correct decision.

It appears that since the appeal reached this court the employee has made a settlement, for the sum of $16,000, of his claim against the negligent third party—the driver of the automobile which struck his vehicle from the rear. The employer has filed in this court a motion "to dismiss the appeal for the reason that there is no justiciable controversy before the court". In support thereof the following facts are alleged by affidavit: (1) appellant has settled his claim against the negligent third party for the sum of $16,000; (2) claimant's award by the Commission totals $3,673.97; (3) if claimant's contention as to what the award should have been is sustained, his compensable recovery would be $5,798.97

and (4) the third party net recovery exceeds his possible compensation recovery and accordingly there is no justiciable controversy. Appellant answered, admitting the $16,000 settlement but alleged the expenses of such recovery exceeded $8,000 and asserting that employer is lawfully bound to pay a proportionate share of the third party recovery costs, including attorneys' fee.

Since we are holding that claimant's injury did not arise out of and in the course of his employment, it appears to be unnecessary to consider either the employer's motion to dismiss or the employee's assertion that the uncontroverted evidence entitles him to a higher rating and larger award.

The judgment of the circuit court is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.