**Gwendolyn E. GARRETT, Appellant,**

v.

**INDUSTRIAL COMMISSION of Missouri and Firestone Tire and Rubber Company and Travelers Insurance Company, Respondents.**

**No. KCD 30692.**

Missouri Court of Appeals, Western District.

April 7, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 1980.

James L. Homire, Jr., St. Louis, for appellant.

Edward W. Warner, St. Louis, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

This is a workmen's compensation case in which appellant, Gwendolyn Garrett, has pursued judicial review of a decision by the Industrial Commission denying her claim for benefits under § 287.240, RSMo 1978 on account of the death of her husband, Robert

Lee Garrett, Jr. The sole question in this case is whether the death of Garrett, an employee of Firestone Tire and Rubber Company, arose out of and in the course of his employment.

Garrett's work was as a customer relations manager for Firestone promoting automobile service business at company stores in Missouri and Illinois. His duties required that Garrett be away from his home in St. Louis several days at a time, the length of his overnight absences being determined by the location of stores visited in his territory. Firestone supplied Garrett an automobile for business use, paid operating and maintenance expenses for the car and reimbursed the cost of meals and lodging. In general, it was company policy that an employee, such as Garrett, would remain away from home overnight if he were to have business two or more days at a store located at least fifty miles distant from the St. Louis area.

On August 11, 1975, a Monday, Garrett left his home and drove to Columbia, Missouri, a distance of about 125 miles, on assignment to work with sales problems at the Firestone store located there. When he left for Columbia, Garrett expected to remain there the balance of the week and informed his wife that this was to be his schedule. Garrett registered at a Columbia motel on August 11, worked that day at the Firestone store and after his meal that evening and a subsequent conversation about business matters, he told his supervisor, another Firestone employee who was in Columbia, that he was retiring to his room and that he would be at the store the next morning.

At 1:55 a.m. on August 12, 1975, the Missouri State Highway Patrol arrived to investigate an accident which had occurred on Interstate Highway 70 some 25 miles east of Columbia. Garrett was found dead in the Firestone owned vehicle which had apparently struck a guard rail, left the highway, overturned and burned. The estimated time of the accident was about thirty minutes prior to arrival of the officers, no witnesses were located and there was no indication of any other occupant of the car.

A subsequent inventory of Garrett's motel room in Columbia disclosed that his clothing, luggage and business materials remained there. In a telephone conversation with his wife earlier the evening of August 11, Garrett had indicated no change of plans and said nothing which would explain his presence on the highway east of Columbia a few hours later. Although Garrett had apparently been proceeding in the general direction of St. Louis immediately prior to the accident and was not prohibited by Firestone from using the company car on a personal mission when away from home, those who testified concerning the tragedy could offer no facts to account for Garrett being on the highway in the early morning hours or to identify his destination.

On the foregoing facts, all of which were undisputed, the Industrial Commission found that Garrett was not engaged upon the business of his employer at the time of his death but was on an independent, personal mission of his own and that his death did not support a claim for workmen's compensation benefits because not associated with his employment. The claimant's appeal asserts, in effect, that Garrett's absence from home at a location dictated by the duties of his employment and his unrestricted authority for use of the company car establish the requisite employment relationship to validate the workmen's compensation claim irrespective of the hour or place of the accident or the purpose for Garrett's activity preceding the casualty.

Certain general principles control and dictate disposition of this case. Although fundamental and familiar, restatement of these principles is requisite as a prelude to their application to the undisputed facts of this case.

The burden is on the claimant in workmen's compensation cases to prove the basis for the claim and, among the essential ingredients, the claimant must prove that the injury was the result of an accident which arose out of and in the course of the injured employee's employment. *Vickery v. ACF Industries, Incorporated*, 454 S.W.2d

620 (Mo.App.1970). Injury to an employee arises out of his employment if it is a natural and reasonable incident thereof, and it is in the course of his employment if the accident occurs within the period of employment at a place where the employee may reasonably be fulfilling the duties of his employment. *Begey v. Parkhill Trucking Co.*, 546 S.W.2d 529 (Mo.App.1977). Whether an accident and the consequent injury arose out of and in the course of employment is ultimately a question of law. *Hunt v. Allis-Chalmers Manufacturing Company*, 445 S.W.2d 400 (Mo.App.1969).

■ The reported cases document a continuing struggle to reconcile these general propositions with a seemingly endless variety of situations in which employees are injured in vehicular mishaps tangentially associated with the location or duties of employment. In general, an employee does not suffer injury arising out of and in the course of his employment if he is hurt while journeying to or returning from his place of work because it is the inevitable condition of employment that every worker present himself at the assigned location to perform the task for which he was hired and depart therefrom when the day's work is over.[1] The employer usually controls neither the place of residence chosen by the employee nor his mode of transport and the employer therefore plays no part in the relative extent of the risk incurred by the employee in traveling to and from work.

An exception to this general rule arises, however, where the employer, because of the distance to the job site or for the convenience of the employer, furnishes the employee's transportation, compensates the employee for use of his own vehicle, or pays the employee for travel time. In those situations, because a specific nexus is established between the work to be done and the physical movement of the employee from point to point, any injury the employee suffers by accident while traveling arises

out of and in the course of the employment and is compensable. *Reneau v. Bales Electric Company*, 303 S.W.2d 75 (Mo.1957); *Griffin v. Doss*, 411 S.W.2d 649 (Mo.App. 1967).

The more difficult cases are those in which some employment related travel is involved, but the accident occurs while the employee is about business of his own. Thus, in *Garbo v. P. M. Bruner Granitoid Co.*, 249 S.W.2d 477, 479 (Mo.App.1952), the employee was required to travel from St. Louis to Wright City for a construction job of several days' duration. Transportation initially from St. Louis to the job site was arranged by the employer. When a weekend arrived with the job still incomplete, the employer offered the crew a choice of remaining in Wright City at his expense or of furnishing their own transport to St. Louis and return to the job site Monday morning. Garbo elected to go home and he was injured in an automobile accident en route. While Garbo was in the course of his employment on the initial trip from St. Louis to Wright City and would also have been so occupied returning to St. Louis when the job was concluded, the court held his weekend visit home was for his own private purpose and convenience, it was no part of his employment and the injuries were not compensable.

■ In *Ray v. Great Western Stage & Equip. Co.*, 413 S.W.2d 576 (Mo.App.1967), the employer furnished Ray an automobile and paid maintenance expense on the car when used for business purposes. Ray was injured in an automobile accident on Friday evening while driving from the employer's office to Ray's home. The court reviewed earlier cases, particularly *Corp v. Joplin Cement Company*, 337 S.W.2d 252 (Mo. banc 1960), and concluded that the employee's use of the company car for transportation home after conclusion of the day's work served no employment related function sufficient to bring Ray within the workmen's

1. *Person v. Scullin Steel Company*, 523 S.W.2d 801, 806 (Mo. banc 1975); *Kunce v. Junge Baking Company*, 432 S.W.2d 602, 606 (Mo. App.1968); *Downs v. Durbin Corporation*, 416 S.W.2d 242, 246 (Mo.App.1967); *Garbo v. P. M. Bruner Granitoid Co.*, 249 S.W.2d 477, 479 (Mo.App.1952).

compensation act. From the *Ray* case, three categories of automobile use incident to employment sufficient to invoke workmen's compensation benefits may be delineated: (1) The expense of the transportation has been assumed by the employer, (2) The work of the employee was to continue at his destination, or (3) The employee was about the employer's business at the time of the accident. Note is also made in *Ray* of the so-called "dual purpose doctrine" which classifies as work related injuries received while the employee is on a mission both for his employer and for himself.

In the subject case, Garrett must be assumed to have been engaged on travel unrelated to the business of Firestone at the time of his fatal accident. This follows because the hour and location of the mishap belie a business activity and, the purpose being otherwise unexplained, the claimant's burden of proof to show an accident arising out of and in the course of his employment is not met.

In support of her contention that private activities of an employee injured while using an employer's automobile may be employment related, appellant cites *Cavalcante v. Lockheed Electronics Co.*, 85 N.J. Super. 320, 204 A.2d 621 (1964). In this New Jersey case and in *Wright v. Industrial Commission*, 62 Ill.2d 65, 338 N.E.2d 379 (1975), a doctrine is announced which apparently has achieved acceptance in several states. Under the rule of these cases, an accident arises out of and in the course of employment if the activity being performed by the employee when he is injured is such as might have been reasonably expected or foreseen by the employer. Thus, in the *Wright* case where the employee was killed in an automobile accident on a Saturday several miles distant from the out of town job site where he was lodged in a motel room, the court held that the employer could reasonably expect an employee working out of town to seek recreational activity on his day of rest and the injury was job related and compensable under workmen's compensation.

Whatever may be the rationale of these cases extending workmen's compensation coverage to accidents occurring while an employee is about his personal business or pleasure and is neither performing a service for his employer nor traveling to or returning from a job location, Missouri has not adopted this expansion of compensation for employment generated injuries. To recover workmen's compensation benefits in Missouri, the employee must prove that the injury was a natural and reasonable incident of the employment and in consequence of some hazard connected therewith. The scope of the contract of employment furnishes the determinative test in defining what is incident to employment in each case. *Hacker v. City of Potosi*, 340 S.W.2d 166, 169–170 (Mo.App.1960); *Heaton v. Ferrell*, 325 S.W.2d 800, 804 (Mo.App.1959).

In this case, Garrett's work required that he travel to various store locations, remain in the locality until his duties were performed and return to St. Louis or journey on to other stores as the needs for service in the territory dictated. The unfortunate accident occurring while Garrett was traveling on the highway late at night for no discernible purpose not only fails to meet the requirement that the claimant prove the injury to have arisen out of and in the course of work for the employer, but these facts generate an inference unfavorable to the claim. The circumstances here strongly suggest activity antithetical to the employer's interest evidenced by a policy of discouraging overnight travel when the assigned work location was more than 50 miles distant from the employee's home and the concomitant assumption by Firestone of the expense for overnight lodging. At the very least, Garrett's employment contract cannot be construed as contemplating highway travel in the early hours after overnight lodging has been obtained for the very purpose of avoiding excessive automobile transportation of the employee.

The record confirms the Commission's finding that Garrett's accidental death did not arise out of and in the course of his employment with Firestone and the decision denying the claim for death benefits

correctly applied the law to the facts adduced in evidence. Accordingly, the judgment of the circuit court is affirmed.

All concur.