Mary Lou BROWN, et al.,
Plaintiffs-Respondents,

v.

MID–CENTRAL FISH COMPANY and
Royal Globe Insurance Co.,
Defendants-Appellants.

No. WD 32917.

Missouri Court of Appeals,
Western District.

Sept. 14, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 2, 1982.

Application to Transfer Denied
Dec. 13, 1982.

Harold J. Maddox, Kansas City, for defendants-appellants.

Robert L. Shirkey and James M. Slone, Kansas City, for plaintiffs-respondents.

Before CLARK, P.J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Mid-Central Fish Company and its insurer, Royal Insurance Company, appeal from a judgment of the circuit court affirming

an Industrial Commission workers compensation award to the widow and minor children of employee Gary Brown, deceased. Brown died from injuries received in a one-car automobile accident which occurred about 11:50 o'clock p.m. on December 15, 1979, on Highway 69 in Johnson County, Kansas, near the junction of Highway 150.

The appellants first challenge the sufficiency of the evidence to support the Commission's award.

Employee Brown was a salesman for Mid-Central Fish Company, and quite a good one. He serviced several large restaurant accounts. He worked entirely on his own schedule, calling on customers early in the morning and sometimes late at night. Mid-Central Fish furnished him a car which he drove to and from work and in his calls upon customers. His customers were located on the Plaza and the south part of Kansas City. Brown lived at Stilwell, Kansas, off Highway 69 at the 179th Street exit. Mid-Central is located at 1656 Washington Street in Kansas City, Missouri.

On the fatal day, Brown left his home for work at 5 o'clock a.m. He was engaged in his work until 3 o'clock p.m. At that time he made a delivery to Harry Starker's on the Plaza. Apparently that was his last call of the day. Sometime later in the afternoon, by prearrangement, he went to the apartment of Bonnie Rudell, a fellow employee at Mid-Central Fish. Bonnie's apartment was located at 7412 Brittany, Merriam, Kansas, near 75th Street at I–35 Highway. When Bonnie Rudell arrived home, after leaving work at 4:45 o'clock p.m., she was accompanied by a third Mid-Central Fish employee, Linda Sue Sanders Seitz. Brown was cooking dinner. The three of them ate dinner together.

At 8 o'clock p.m. Brown went to the nearby home of Tom Spinner. Brown and Spinner returned to Bonnie's apartment about 8:30 p.m., with Spinner's car. Brown had earlier made arrangements for Spinner

to lend his car to Bonnie on the following day. The four of them—Brown, Spinner and the two women—watched Monday night football until 11:20 p.m. Brown and Spinner left at this time, leaving Spinner's car with Bonnie. Apparently Spinner was left at his apartment and Brown proceeded toward home.

The accident which caused Brown's death occurred at about 11:50 o'clock p.m. The place of the accident was on Highway 69 near the junction of Highway 50. The place of the accident was on his normal route home from Kansas City. The Brown car left the highway and overturned, resulting in injuries to Brown which sometime later issued in his death.

The Industrial Commission found that: the accident which resulted in the death of employee Brown "occurred within the period of his employment and was at a place he could have reasonably been expected to be while fulfilling the duties of his employment." . . .

That Brown temporarily deviated from his employment by cooking dinner for some friends and watching television at the apartment of Bonnie Rudall (sic) before the accident does not defeat the compensability of a claim for the injuries he sustained in the highway accident later that evening, for Brown resumed the course and scope of his employment after he left the apartment of Bonnie Rudall, dropped off Tom Spinner at Spinner's home, and when he commenced to drive the company car over the regular route home as he routinely did every work day.

The evidence, which we have recounted above, fully supports the fact findings of the Commission.

▪ Having found the facts as the Commission did, its legal conclusion follows that the accident was compensable as arising out of and in the course of the employment.[1] The case is quite similar to *Beem v.*

---

1. The defendants do not argue that the employee's trip home from his work took him outside the course and scope of his employment, but that feature should perhaps be noted. As a

general rule injuries incurred by employees going to and from work are not considered to arise out of and in the course of their employment. *Person v. Scullin Steel Co.,* 523 S.W.2d

*H.D. Lee Mercantile Co.,* 337 Mo. 114, 85 S.W.2d 441 (1935). There the traveling salesman, living in Harrisonville, completed his work day at Pleasant Hill at about 9:30 o'clock p.m. At that time he repaired to an all-night restaurant where he played cards with friends until about 12:30 o'clock a.m. He then started on his trip home to Harrisonville. On the trip home he was robbed and murdered. The employer in that case took the same position that Mid-Central Fish and its insurer have taken in this case, to-wit, that the employee had abandoned his employment and was not within the scope of his employment when the accident occurred. Without apology for the length of the quotation, we shall quote from the Supreme Court opinion in *Beem:*

> The facts here, however, are that deceased finished his purely personal pleasure of playing cards at about 12:30 a.m., and then did exactly what defendants insist that he should have done at 9:30 p.m., that is, drive his automobile over the highway from Pleasant Hill to Harrisonville. Had the deceased, on finishing his work for his employer at Pleasant Hill at 9:30 p.m., promptly commenced traveling in his automobile to Harrisonville over this same usual route, there to stay overnight and resume his traveling and selling goods the next morning, as was his custom and intention, and had met with this same accident at the place it occurred (though at an earlier hour of the night), we do not believe that defendants would contend that such accident did not arise out of and in the course of his employment. Certainly they could not successfully so contend under the repeated court rulings. *Schulte v. Grand Union Tea & Coffee Co.* (Mo.App.) 43 S.W.(2d) 832, 833; *Sawtell v. Stern Bros. & Co.,* 226 Mo.App. 485, 44 S.W.(2d) 264; *Webb v. Northside Amusement Co.,* 298

Pa. 58, 147 A. 846; *Rachels v. Pepoon,* 135 A. 684, 5 N.J.Misc. 122; Id., 104 N.J.Law, 183, 139 A. 923; *Meyer v. Royalton Oil Co.,* 167 Minn. 515, 208 N.W. 645; *Anderson v. Nagel,* 214 Mo.App. 134, 259 S.W. 858, 861. These cases hold that, although a traveling salesman or like employee abandons his employment for a time for work or pleasure of his own, yet if he resumes his employment and is thereafter injured by an accident while pursuing such resumed employment, the accident is one arising out of and in the course of his employment....

> ... Under the facts here, the fact of the deceased having engaged in playing cards for his own pleasure at the restaurant in Pleasant Hill for some three hours, before resuming his usual travel to Harrisonville, had no other effect on the course of his employment than that he was at the place of the accident some three hours later than if he had not made such diversion.

85 S.W.2d at 444. To a similar effect, see *Hugelman v. Beltone Kansas City Hearing Service Co.,* 389 S.W.2d 220 (Mo.App.1965) and *Schulte v. Grand Union Tea and Coffee Co.,* 43 S.W.2d 832 (Mo.App.1931).

■ The appellants claim, however, that Brown was intoxicated at the time of the accident and that his intoxication caused the accident. This they claim constituted a defense to the compensation claim. While intoxication of an employee may furnish a defense to his or his dependent's claim for workmen's compensation, it must be shown that the employee was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment. *O'Neil v. Fred Evens Motor Sales Co.,* 160 S.W.2d 775, 779 (Mo.App. 1942). There is no evidence in this case that Brown was at all intoxicated at the

801, 806[4] (Mo. banc 1975); *Kunce v. Junge Baking Co.,* 432 S.W.2d 602, 606[4] (Mo.App. 1968). However, where the employer provides the employee's car as an incident of his employment, especially where he is given a broad discretion with respect to working hours and routes of travel, an accidental injury suffered while going to or from work may be compensa-

ble. *Reneau v. Bales Electric Co.,* 303 S.W.2d 75, 79[3] (Mo.1957); *Sanderson v. Producers Comm'n Ass'n,* 360 Mo. 571, 229 S.W.2d 563, 567[5] (1950); *Garrett v. Industrial Comm'n,* 600 S.W.2d 516, 519[4] (Mo.App.1980); *Griffin v. Doss,* 411 S.W.2d 649, 653[6] (Mo.App.1967); 1 Larson, Workmen's Compensation Law, § 16.30 (1978).

time of the accident. There was a strong odor of alcoholic beverage about Brown's person and inside the car, but this alone does not show Brown's intoxication. Appellants say there could be no other explanation for the accident than that Brown was intoxicated, but that statement is plainly wrong.

The evidence is sufficient to support the award and defendant's claim of insufficiency is disallowed.

█ The employer's other point is that the award was based upon a theory different from the pleaded theory, and that claimant's trial theory was different from either the pleaded theory or the theory upon which the Commission made the award. This complaint is based upon the fact that the claim, on line 15 of the printed claim form, "How injury occurred, cause, and work employee was doing for employer at the time" stated: "Automobile accident, salesman delivery of food for Mid-Central Fish Company during the scope of his employment". There was no evidence adduced upon the hearing that the employee was delivering food. There was some evidence introduced by the claimant that he was headed for J & J Barbecue, a customer, to deliver a bottle of whiskey as a gift. To either destination, his home or J & J Barbecue, he would have taken the route where the accident occurred. Much of the evidence in the case was aimed at proving, on claimant's side, and disproving, on the employer's side, that his destination was J & J Barbecue and his purpose was to deliver the bottle of whiskey.

The evidence took rather a wide range. The employee's activities throughout the day, up to the time of the accident, were thoroughly gone into. The evidence of his being en route to the J & J Barbecue was met head-on by the employer and insurer without any objection that it was aside from the claim as described in the written claim. There was no objection at the hearing to the trial of the issue whether the decedent was on his way home; indeed, it appears that the defendants insist that he was on his way home, rather than on his way to the J & J Barbecue. The issue was tried by consent. The employer does not claim that it was surprised, unprepared to meet the issue of the employee's employment-related activity at the time of the accident or that it was in any way prejudiced by the trial of the issue. *Travelers Indemnity Co. v. Beaty,* 523 S.W.2d 534, 537 (Mo.App.1975). See also Missouri Supreme Court Rule 55.33(b); *Stegemann v. Helbig,* 625 S.W.2d 677, 679 n. 1 (Mo.App.1981). The cases cited by defendant, namely, *Bess v. Coca-Cola Bottling Co. of St. Louis,* 469 S.W.2d 40 (Mo.App.1971), and *Vogt v. Lambert Pharmacal Co.,* 218 S.W.2d 788 (Mo. App.1949), do not support defendant's argument. The point is denied.

The judgment of the circuit court is affirmed.

CLARK, P.J., concurs.

MANFORD, J., dissents in separate opinion.

MANFORD, Judge, dissenting.

This dissent should not be misconstrued as a callous indifference to the tragedy which befalls any family upon the loss of one of its members. On the other hand, the workmen's compensation laws of this state have never been intended to impose upon an employer the status of insuror of his employees for all reasons. The majority opinion herein takes such concept to the ultimate brink of such a concept. The majority opinion lends judicial sanction to an ever growing belief that government has the inherent duty to spend and distribute the money and property of others.

In my opinion, there is no credible evidence upon this record to show the deceased employee herein ever resumed his employment to bring this claim and award within the statute. In a recent opinion by this very court, the parameters of recovery under our workmen's compensation law were stated when this court declared: *"To recover workmen's compensation benefits in Missouri, the employee must prove the injury was a natural and reasonable incident of the employment and in consequence of*

*some hazard connected therewith. The scope of the contract of employment furnishes the determinative test in defining what is incident to employment in each case,"* (emphasis added) (citations omitted). *Garrett v. Industrial Commission of Missouri,* 600 S.W.2d 516, 520 (Mo.App.1980).

The majority opinion quotes the following from the findings of the Commission to support its decision: "... (T)he accident which resulted in the death of employee Brown 'occurred within the period of his employment and was at a place he could have reasonably been expected to be while fulfilling the duties of his employment' ... " The quote continues to express the Commission's consideration of the decedent's deviation *and the "resuming" of the employment because the decedent commenced to drive the company car over the regular route home.* In the first instance, the evidence as to the "regular route home" was provided by the surviving widow, who, as the record reveals, testified to two alternative routes from the Plaza area of Kansas City, Missouri, to Highway U.S. 69 in the state of Kansas. There is no question her testimony as to both routes included the location of the vehicular accident which caused the death of her employee husband, but she testified only to having ridden with her husband when he had, on prior occasions, delivered items to customers. Her testimony, in my judgment, lacks sufficiency to support a conclusion the area of the accident was a "regular route home". As near as I can determine, from the evidence upon the record, it is certain the deceased left work, went to the apartment of a friend, spent the evening with the friend and another couple, took one Tom Spinner to his residence, and was involved in a one vehicular accident on U.S. 69 Highway in Kansas. In my judgment, it is impossible to discern from the evidence exactly where Tom Spinner lived in relation to where the accident arose. It is not so significant as to the geographical factor, but more importantly, it bears relation to the issue that the deceased did not "resume" his employment. What I observe from the evidence is that the deceased, after leaving his friend's apartment, then took Spinner to his residence and was proceeding home. This was the continuation of a private, not an employment activity. The mere fact that the accident occurred on a highway, *even* presumed to be a part of his regular route homeward, does not support the conclusion of the Commission nor the majority opinion.

I venture both the Commission and the majority opinion were persuaded toward their conclusions by the erroneously admitted testimony of the widow, who, over objection, was allowed to testify that the deceased called her after 10:30 p.m. and told her he was going to deliver a bottle of whiskey to a customer whose business location was south of the location of the deceased's residence. In the first instance, such testimony was of the rankest form of hearsay. I am not unaware of the exception to the hearsay rule which permits such testimony as a declaration of present intention to do a particular act, *Lewis v. Lowe & Campbell Athletic Goods Co.,* 247 S.W.2d 800 (Mo.1952), *Edwards v. Ethyl Gasoline Corp.,* 342 Mo. 98, 112 S.W.2d 555 (1937), but that rule is tempered with the limitation that any such declaration must have been made in a natural manner and not under suspicious circumstances, *Lewis* supra. This testimony must be weighed in light of other evidence upon this record. The investigation report of the accident reveals the accident was *discovered* by a passing motorist who notified authorities, after observing the scene, by CB radio. The report was received at 11:52 p.m. The decedent's friend testified decedent left the apartment with Tom Spinner at 11:20 p.m. The evidence reveals there was no phone in the apartment. The evidence reveals decedent did not leave the apartment for purposes of using a telephone. From this evidence, in a period from 11:20 p.m. to 11:52 p.m., decedent departed his friend's apartment, went to the vehicle, drove his friend, Spinner, home, located and used a telephone, and returned to U.S. Highway 69. These events would have had to occur within a time frame of 32 minutes, without even accounting for the time lapse involved in

the discovery and report of the accident by a passing motorist. At best, these factors make such hearsay testimony suspect. The foregoing, coupled with the fact the widow did not know decedent's whereabouts, makes such testimony even more suspect. It is evident from the Referee's ruling, he did not place any credibility upon the testimony.

The majority opinion alludes to the testimony that the decedent was enroute to deliver a gift of liquor to a customer. This finding by a majority (although not a finding by the Commission) premises such upon the validity of the testimony of the widow regarding the alleged phone call from decedent. In addition, further evidence casts serious doubt on the allegation that this customer was, in fact, an active customer of decedent. Further, it is interesting to note that there was not one shred of evidence that there was any bottle of liquor (the supposed customer's gift) in decedent's vehicle. There is insufficient evidence to support the majority conclusion that decedent was enroute to deliver a bottle of liquor as a customer's Christmas gift.

The majority addresses the defense claim of intoxication as the cause of the accident in a rather cursory manner holding that, unless it be shown by the evidence, decedent was unable to perform his employment duties, such defense would not lie, citing *O'Neill v. Fred Evans Motor Sales Co.*, 160 S.W.2d 775 (Mo.App.1942). The majority references only the odor of alcohol within the vehicle. The majority opinion does not mention that the accident report also included the officer's observation of a *strong odor of alcohol* upon decedent's person and an empty glass which also held the strong odor of alcohol. An interesting feature is that neither the accident report or a later inventory of the vehicle listed a bottle of liquor (the supposed customer's gift) or a cardboard case, holding bottles of liquor, which the widow testified to having observed in the vehicle the day before the accident.

The only plain common sense conclusion which can be reached under all the evidence (i.e.) a one vehicular accident which shows the vehicle struck a medial guard rail before turning over three times and before ending upright in the medial strip on an express highway; an empty glass with the odor of alcohol and the strong odor of alcohol upon decedent's person, is that this accident was alcohol related. The accident and the circumstances under which it occurred cannot, by any stretch of the imagination, be said to "... *be a natural and reasonable incident of the employment and in consequence of some hazard connected therewith*", *Garrett* supra.

The judgment of the circuit court affirming the award of the Commission should be reversed and this cause should be remanded with instructions directing the Commission to enter an order of denial of this claim in conformity with the ruling heretofore entered by the Referee.