Barbara BLATTER, et al.,
Plaintiffs-Respondents,

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF AGING,
Defendant-Appellant.

No. 12961.

Missouri Court of Appeals,
Southern District,
Division One.

July 25, 1983.

Motion for Rehearing or to Transfer Denied on Aug. 15, 1983.

Application to Transfer Denied Sept. 20, 1983.

John Achcroft, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, Donald R. Duncan, Asst. Atty. Gen., Turner, Reid, Duncan & Loomer, Springfield, for defendant-appellant.

David Gregory Warren, Paul D. Rittershouse, Daniel, Clampett, Rittershouse, Powell & Cunningham, Springfield, for plaintiffs-respondents.

FLANIGAN, Presiding Judge.

The widow and the ten-year-old child of Robert Earl Blatter filed a claim, under "The Workers' Compensation Law" for death benefits and burial expenses arising out of his death. Blatter was fatally injured at 9:24 p.m. on October 4, 1979, when he was hit by a vehicle as he was walking across Glenstone Avenue in Springfield. He died at the scene.

Blatter's self-insured employer was the Missouri Department of Social Services, Division of Aging. The claim was tried before James H. Wesley, Chief Administrative Law Judge of the Division of Workers' Compensation, who found in favor of claimants and awarded the maximum statutory benefits. The employer filed an application for review to the Labor and Industrial Relations Commission, which affirmed the award. The employer appealed to the Circuit Court of Greene County, § 287.490,[1] where the commission's award was affirmed. The employer appeals.

The employer contends that there was not "sufficient competent evidence in the record," § 287.490, to warrant the making of the award and to support the finding of the commission that the fatal accident "arose out of and in the course of" Blatter's employment.

■■■ On this appeal this court must determine if the award of the commission is supported by competent and substantial evidence on the whole record. All of the evidence and legitimate inferences therefrom must be viewed in the light most favorable to the award. This court may not substitute its judgment for that of the commission. The award may be set aside only if there is no substantial and competent evidence to support it or if the findings of the commission are clearly contrary to the overwhelming weight of the evidence. Conflicts in the evidence are for resolution by the commission. *Blair v. Associated Wholesale Grocers Co.,* 593 S.W.2d 650, 652 (Mo.App.1980).

Blatter had been an employee of the Missouri Division of Family Services for about nine years prior to his death. In 1979 the Division of Aging, an agency of the Department of Social Services, was created. Valdon Vire, one of the principal witnesses for the claimants, was the regional administrator for the Division of Aging and was in charge of the south half of Missouri, which included Waynesville where Blatter worked. Vire's deputy in that area was Alvin Hays. Blatter, whose immediate supervisor was Joyce Massey, was a case worker for the Division.

Vire arranged for a two-day training session to be held in Springfield beginning Thursday, October 4, at 10 a.m. and ending at 4:30 p.m. the next day. Thirty-four employees of the Division, including Blatter and his superiors Massey, Hays, and Vire, attended the session which was held at the Drury Inn motel on Glenstone Avenue. Attendance at the session was mandatory.

Those employees who resided more than 50 miles from Springfield were provided with lodging at the Drury Inn at state expense. Blatter was one of the 22 employees so provided. The state also paid the cost of travel and meals for the persons attending the conference.

Prior to the two-day session the Division mailed an interoffice communication to the supervisors of the employees who would attend. The memorandum contained an agenda, which did not mention an evening session on Thursday.

During the day session on Thursday, Valdon Vire announced to the group that "Mr. Hays and I and any other participants at

the meeting who would like to join us for a social activity for cocktails and drinks that afternoon were to meet at approximately 7 p.m. in the lobby of the Drury Inn and anyone was welcome to do so." Vire also announced that "the plan was to go across the street to an establishment known as Wild Bill's for cocktails and drinks and discussions and activities and socialization." A similar announcement was made by Hays.

According to Vire, attendance at the session at Wild Bill's was not "mandatory." Hays testified that the "region-wide training sessions" were held about every three or four months and that he, as a supervisor, "felt kind of a social obligation to go" to the informal evening session. Massey testified that "at 99 percent of the training sessions they have an informal session in the evening."

The day session on Thursday ended about 4:30 p.m. About 15 or 20 of the group went to Ebenezer's Restaurant in Springfield for their evening meal. Blatter was not in that group and the record does not disclose where or whether Blatter had his evening meal.

Blatter, Vire, Hays and 10 or 12 other of the state employees met in the Drury Inn lobby at about 7 p.m. Vire described Wild Bill's as "a large roomy barnlike structure with tables and booths, a country music band and dance floor, and bar." The Drury Inn is on the east side of Glenstone. Wild Bill's is on the west side of Glenstone, across from Drury Inn. According to Vire, "We occupied one or more tables as a group at Wild Bill's. We were sitting 10 to 12 feet from the band which had four or five members and a female singer." Vire was sitting across the table from Blatter. Although "it was loud to a degree," it was possible to converse while the band was playing. Approximately 100 people were in Wild Bill's.

Asked whether he considered the "informal evening get-together to be beneficial both to the employees of the Division as well as to the Division," Vire replied, "I personally in these type of meetings and others found that discussions informally

about activities, whether they be specifically work-related all the time or not, were beneficial to myself as a supervisor and also to employees who perhaps did not get opportunities to ask questions or make comments, so in that sense I found they were helpful, yes." Asked if he recalled "any of the discussions concerning the sessions he had with any of the people who were there at the informal meeting at Wild Bill's," Vire responded, "There were some discussions I believe that Mr. Blatter had with me about his work load and this sort of thing which was an issue we discussed, and also ... my response to that I think was to commend him, you know, he was doing a good job and that type of thing. I don't know any specific problems that he raised other than that type of discussion."

Vire said that "the discussions that [he] had with the employees who were present there at Wild Bill's ... were ... the ordinary type of discussions that you would expect employees of the Division to engage in at an informal get-together ... work load, work problems ... as well as other topics."

Vire testified that the Division of Aging "was sort of an infant at that time," that it officially came into existence October 1, and this was "the first training session that it actually had" and that "any information [which] could be picked up would of course be beneficial to the employees at that time." Vire also said, "I personally have found that there is indirect benefit from such [informal sessions] because with the wide separation geographically of myself or the supervisory staff not having immediate daily contact with the employees that this was opportunity for them to voice concerns or to, you know, get feedback on how they were functioning and so should they wish to do this I certainly would not discourage such input."

Although Blatter drank some beer at Wild Bill's, the record supports a reasonable inference, favorable to the award, that he was not intoxicated. At the time of the tragedy Blatter was walking from Wild

Bill's across Glenstone, a major thoroughfare, and was returning to Drury Inn.

The commission, in its final award, adopted the findings of Judge Wesley. One such finding reads: "In considering the fact that informal meetings are normally held after scheduled meetings and that it provides an open forum for the employees to discuss any problems, it is my opinion that the informal meeting has by custom and/or practice become an incident of employment and therefore any injuries sustained as a result of the informal meeting would arise out of and in the course of the employment. Perhaps Mrs. Massey's testimony (Social Services Supervisor I, Missouri Division of Aging) went to the crux of the matter when she testified that the informal meetings were beneficial and that she could learn a lot and 'could ask a question and get an answer.'"

■ The burden of proof was on the claimants, *Garrett v. Industrial Commission,* 600 S.W.2d 516, 518[1] (Mo.App.1980), to show that Blatter's death resulted from an accident "arising out of and in the course of his employment." § 287.120, par. 1. An injury arises "out of" the employment if it is a natural and reasonable incident thereof and is the rational consequence of some hazard connected with the employment. An injury arises "in the course of" the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment. *Kansas City, Missouri Police Dept. v. Bradshaw,* 606 S.W.2d 227, 230 (Mo.App.1980).

■ The terms "out of" and "in the course of" the employment are not synonymous but are separate tests for compensability, and both must be satisfied before the claimants here may prevail. *Fingers v. Mount Tabor United Church of Christ,* 439 S.W.2d 241, 243 (Mo.App.1969). There is no "all embracing definition" of the phrase "arising out of and in the course of his employment," and every case involving the phrase "should be decided upon its own particular facts and circumstances and not

by reference to some formula." *Foster v. Aines Farm Dairy Co.,* 263 S.W.2d 421, 423 (Mo.1953). Where, as here, there is no significant factual dispute, the issue of whether an accident and the consequent injury or death arose out of and in the course of employment "is ultimately a question of law." *Garrett,* supra, 600 S.W.2d at 519.

■ Missouri cases have emphasized that it is the nature of the employee's activity at the time of the injury itself which governs the issue of compensability. *Griffin v. Doss,* 411 S.W.2d 649 (Mo.App.1967); *Kunce v. Junge Baking Company,* 432 S.W.2d 602, 610 (Mo.App.1968). "It is not sufficient that the employment may simply have furnished an *occasion* for an injury from some unconnected source." (Emphasis in original.) *Kelley v. Sohio Chemical Company,* 392 S.W.2d 255, 257 (Mo. banc 1965). Missouri has rejected the so-called "positional-risk theory" under which an accident becomes compensable on a mere showing that it would not have happened but for the fact that the conditions or obligations of the employment put claimant in the position where he was injured. *Lathrop v. Tobin-Hamilton Shoe Manufacturing Company,* 402 S.W.2d 16, 19 (Mo.App.1966). It is not sufficient that "the victim's employment caused him to be at the place where it happened." *Liebman v. Colonial Baking Company,* 391 S.W.2d 948, 952 (Mo. App.1965).

■ A claim is not compensable if, at the time of the injury, the employee is engaged in "pleasure purely his own." *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625, 628 (Mo.1969). On the other hand, "[a]n injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable, for when some advantage to the employer results from the employee's conduct, his act cannot be regarded as purely personal and wholly unrelated to the employment. Accordingly an injury resulting from such an act arises out of and in the course of the employment; and this rule is applicable even though the advantage to

the employer is slight." *Wamhoff v. Wagner Electric Corporation,* 354 Mo. 711, 190 S.W.2d 915, 919 (Mo. banc 1945). To similar effect see *Snowden v. Orscheln Brothers Truck Lines,* 446 S.W.2d 494, 496–497 (Mo. App.1969).

This court has said: "The 'concurrent benefit' principle cannot be applied without limitation. Eventually, the indirect benefit to the employer becomes so tenuous as to be imperceptible." *Elliott v. Darby,* 382 S.W.2d 70, 75–76 (Mo.App.1964).

Our supreme court has said: "In some situations while an employee is away from his employer's place of business in a traveling capacity, an injury sustained while traveling from a hotel or place of business activity to a place to eat does arise out of and in the course of his employer's business." *Miller,* supra, 436 S.W.2d at 628.

The employer's brief in the case at bar states that Blatter's "trip to Springfield was unquestionably employment-motivated." The employer further states, "Although the work of Blatter did create the necessity for his travel to the Drury Inn in Springfield and an ultimate return trip to his home, the work did not necessitate his evening trip to Wild Bill's while in Springfield."

Missouri workmen's compensation cases involving injuries to an employee sustained in conjunction with his attendance at an employer-sponsored event held at a place some distance from the usual place of work include the following: *Riggen v. Paris Printing Co.,* 559 S.W.2d 625 (Mo.App.1977); *Graves v. Central Electric Power Cooperative,* 306 S.W.2d 500 (Mo.1957); and *Stout v. Sterling Aluminum Products Co.,* 213 S.W.2d 244 (Mo.App.1948).

In *Riggen* the court held that the employee was not entitled to compensation for injuries sustained when she slipped and fell in the street while enroute to a pancake breakfast sponsored by the employer. The employee was encouraged but not compelled to attend the breakfast which took place before the regular working hours. 559 S.W.2d at pp. 629–630 the court said:

"Inasmuch as injuries sustained by an employee in connection with an employer-sponsored event usually occur while the employee is not performing the duties for which he was employed, the inquiry is whether the social affair is sufficiently related to the employment to justify the conclusion that the injury arose out of and in the course of employment. Whether an employee injured while attending or traveling to or from an employer-sponsored social affair was compelled, directly or indirectly to attend, whether the employer derived some benefit from his sponsorship of the function, the extent to which the employer sponsored, controlled, or participated in the activity, and whether the social affair was a benefit or consideration of the employment to which the employee was entitled, have been recognized as the primary elements to be considered in determining the compensability of the injury."

In *Graves,* where recovery was permitted, the employee drowned while attending a company picnic. The death resulted from an attempt to rescue a child who had fallen into a lake. The employee's presence at the picnic was required by the employer and the employee had been assigned the stand-by duty of "awaiting and being available for an emergency call."

In *Stout* the employee was injured by slipping on a stairway at a public park while departing from a company-sponsored picnic which he had been encouraged, but not compelled, to attend. The picnic was held on a Saturday when the employer's plant was closed. The court, in denying compensation, said, "The courts of our state have never gone so far in applying such liberal construction rule to the Compensation Act."

In *Conklin v. Kansas City Public Service Company,* 226 Mo.App. 309, 41 S.W.2d 608 (1931), the court upheld an award of compensation to an employee who was struck in the eye by a baseball bat while watching a baseball game held during the noon lunch hour on the employer's premises. The court said that the injury arose "out of a settled practice or condition known to the employ-

er," and that there was a "causal relationship between the injury and the employment."

No Missouri case has been found which involved injury to or death of an employee sustained while attending an out-of-town convention or seminar sponsored by the employer. Cases involving that general factual situation have arisen in other states. In some, compensation has been awarded: *Shell Oil Company v. Industrial Accident Commission,* 18 Cal.Rptr. 540, 199 Cal. App.2d 426 (1962)—(employee injured in highway accident on way home); *Cabin Crafts, Inc. v. Pelfrey,* 119 Ga.App. 809, 168 S.E.2d 660 (1969)—(employee died while eating dinner at convention hotel); *Noble v. Zimmerman,* 237 Ind. 556, 146 N.E.2d 828 (1957)—(employee injured while diving into lake during recreation portion of "required monthly meeting"—3 to 2 opinion); *Martin v. Georgia-Pacific Corporation,* 5 N.C.App. 37, 167 S.E.2d 790 (1969)—(employee struck by car while walking to restaurant for evening meal several blocks from hotel during "free time"); *Macke Vending Co. v. Abrahams,* 27 Pa.Cmwlth. 490, 365 A.2d 451 (1976)—(employee killed while driving home from training session). In others, compensation has been denied: *Perry v. American Bakeries Company,* 262 N.C. 272, 136 S.E.2d 643 (1964)—(employee injured while swimming in hotel pool at 10 p.m.); *Yorkin v. Volvo Distributing Co.,* 143 N.J.Super. 474, 363 A.2d 908 (1976)—(employee attended convention in Miami Beach; stayed in Florida three additional days at own expense; injured while surfing on second day of overstay); *Schwab v. Dept. of ILHR,* 40 Wis.2d 686, 162 N.W.2d 548 (1968)—(employee killed in highway accident driving home from a "supervisory get-together"; employee invited to attend only the social hour).

"To justify an award of compensation for injuries sustained by an employee while going to or coming from, or while attending a meeting, conference, or convention, it must be clear that at the time of the accident, the employee was not exercising a personal privilege for his own benefit, wholly apart from his employment or his employer's interest. Where the trip or attendance at the meeting, conference or convention is clearly for the employee's own interest and not necessarily in any way for the benefit of his employer, compensation will be denied. Where the trip or attendance is one which the employer ordered or directed, or is for the sole benefit of the employer, or is to the mutual advantage of both the employer and his employee, compensation may be recovered." Schneider, Workmen's Compensation Text, Vol. 7, § 1665(a), p. 285.

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction to be within the course of their employment continuously during the trip, except when a distinct department [departure?] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." Larson, Workmen's Compensation Law, Vol. 1A, § 25.00.

See also, generally, Larson, Workmen's Compensation Law, Vol. 1A, § 27.31(c); 47 A.L.R.3d 566 (Workmen's Compensation: Job-related social event and particularly § 11—"Meetings and other functions of a combined business and social nature.")

■ Blatter was required by the employer to attend the convention in Springfield. That duty entailed his staying at the Drury Inn at the employer's expense. In going to and from Springfield, Blatter would have been "on the job." His tragic death stemmed from an informal evening session at Wild Bill's. The holding of such a session was a "settled practice" known to the employer. Approximately one-third of the employees in attendance at the training session went to Wild Bill's. That one-third included regional administrator Vire, Vire's deputy Hays, and Blatter's immediate supervisor, Joyce Massey, although Mrs. Massey, a non-drinker, did not arrive at Wild Bill's until after Blatter's death.

The inquiry, in the language of *Riggen,* supra, is whether the social event at Wild Bill's was sufficiently related to Blatter's employment to justify the conclusion that his death arose out of and in the course of

the employment. Blatter was not compelled to attend the session at Wild Bill's but, during the course of the business session earlier that day, such attendance was repeatedly encouraged by Mr. Vire and Mr. Hays. In the sense that there would be no reimbursement for the cost of drinks, the session at Wild Bill's was not "sponsored" by the employer. To some extent, however, the employer [through Vire, Hays, and Massey], participated in the activity at Wild Bill's. The social affair at Wild Bill's was not a benefit or consideration of the employment to which Blatter was "entitled," but the record supports the finding that some benefit, admittedly slight, was derived by the employer from the informal discussions which took place at Wild Bill's and from the opportunity for such discussions. These discussions included one between Blatter and Vire.

This is a very close case. Although the resolution of the issue has not been free of difficulty, this court concludes that there was sufficient competent evidence in the record to warrant the making of the award.

The judgment is affirmed.

GREENE, C.J., and TITUS and CROW, JJ., concur.