**William A. GEE, Appellant,**

v.

**BELL PEST CONTROL and National Union Fire Insurance Company, Respondents.**

**No. WD 42912.**

Missouri Court of Appeals, Western District.

July 24, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1990.

Application to Transfer Denied Oct. 16, 1990.

Thomas E. Thompson of Stoup & Thompson, Kansas City, for appellant.

Randa Rawlins and Jill Frost of Niewald, Waldeck, Norris & Brown, P.C., Kansas City, for respondents.

Before TURNAGE, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This is a direct appeal from a ruling by the Missouri Labor and Industrial Relations Commission which denied worker compensation benefits. The ruling is reversed and the cause remanded with instructions.

Appellant presents four points on appeal which, in summary, charge the Commission erred in reversing the award of benefits because (1) the facts found by the Commission did not support the award, (2) there was not sufficient competent evidence on the record to warrant the making of the award, (3) the Commission acted without or in excess of its powers, and (4) expert testimony relating to appellant's blood alcohol content was inadmissible as it was based on hearsay evidence, speculation and conjecture.

Commissioner Hannelore D. Fischer wrote the majority opinion for the Commission. Commissioner Robert L. Fowler filed a dissenting opinion. The Commission found that Mr. Gee's blood alcohol content supported the conclusion that claimant was so intoxicated that he could not physically or mentally engage in his employment. The Commission further opined that public policy did not allow them to condone an award of benefits to an individual whose intoxicated state caused his own injuries. The Commission further found that Mr. Gee had deviated from his path of duty to conduct personal business and, thus, was outside the course and scope of his employment.

William Gee was employed by Bell Pest Control Company ("Bell Pest") beginning in mid-June of 1986. He was employed as a service technician and his duties included treating homes for bugs as well as calling on prospective customers in order to sell them regular bug or termite treatment for their home or commercial space. To complete these tasks, a truck was provided to Mr. Gee by Bell Pest. Mr. Gee, as well as all other technicians employed by Bell Pest, was offered commissions as an incentive to sell bug and termite treatments to customers.

When Mr. Gee was hired by Bell Pest, his work would take him to many different job sites in the Kansas City area. Each day, Mr. Gee would receive a certain number of tickets which would give the location of the site to be treated. In one day he might travel to Lee's Summit, Blue Springs, and Grain Valley, Missouri and then over to Overland Park, Kansas. Mr. Gee would typically work six days a week, but the hours during the day would sometimes vary because Bell Pest technicians would treat business locations during the hours when they were closed.

Mr. Gee was encouraged by Bell Pest management to sell bug and termite treatments. He was to solicit new jobs and orders after he had finished his assigned treatment tasks. Technicians were encouraged by Bell Pest management to solicit new accounts from their friends because these were the easiest accounts to sell. Mr. Gee was never given a set territory by Bell Pest. He was never given formal instruction as to the servicing or selling of accounts because he had plenty of past experience. He had previously worked for a pest control company in the Lake Perry, Lawrence, and Ozawkie, Kansas areas. Bell Pest's territory ranged from Odessa to Excelsior Springs to Harrisonville, Missouri and from Spring Hill to Olathe to Bonner Springs, Kansas, and all of Wyandotte and Johnson Counties. Mr. Gee was never informed of any company policies regarding the use of alcohol on the job.

On Saturday, November 22, 1986, Mr. Gee reported for work at Bell Pest, located in Independence, Missouri, at approximately 8:00 a.m. He picked up his job tickets for the day and proceeded to his first job in Independence, Missouri. He then went back to Bell Pest, contacted his next customer, and proceeded to the work site in Lee's Summit, Missouri, where he performed a flea eradication. He finished at approximately 1:00 p.m.

Mr. Gee then went to his home to eat lunch, shower, and change into a fresh uniform. He ate a sandwich and drank a can of beer while at home. He left his home and went to a gas station to fill up with gas and check his oil. From the gas station, he headed to Lake Village, outside of Lake Perry, Kansas in order to give an estimate on a termite job to Mr. and Mrs. Craven, who were friends of his. He arrived at Lakeside Village around 4:00 p.m., and went to the Craven house. No one was at the house at the time, so he left and came back at approximately 4:30 p.m. Mrs. Craven answered the door and Mr. Gee told her he was there to check on a termite job for her home which he had previously discussed with her husband. He then went about his business of estimating the amount of a termite eradication for the Cravens' home. While estimating the job, Mr. Gee drank a beer. He drew a rough diagram of the home and the areas to be treated, and quoted to Mrs. Craven a price of $225.00 for termite and flea eradication. Mrs. Craven gave Mr. Gee a check

for $225.00. Mr. Gee left between 5:30 and 5:45 p.m.

Mr. Gee then proceeded to Bill Mercer's grocery store at the entrance to Lakeside Village. There, he had a small pizza and a beer and spoke with Mr. Mercer about the pest control business. He used the telephone at Bill Mercer's to call his former boss, Gene Cumpton, at the other pest control company. The Cumptons live close to Bill Mercer's grocery. On his way home to Independence, Mr. Gee stopped by the Cumpton home at approximately 7:00 p.m., but Mr. Cumpton had just left to go to his child's school for a wrestling meet.

From the Cumpton home, located about one mile east of County Road 1029, Mr. Gee took Longview Road, also called Apple Valley Road, which runs in an east-west direction and intersects with County Road 1029. County Road 1029 to Highway 92 is the route Mr. Gee usually traveled back to Kansas City. At the intersection of Longview or Apple Valley Road and County Road 1029 were two stop signs which were situated on Longview or Apple Valley Road. As Mr. Gee was traveling west, attempting to make a left turn to put him in a northerly direction onto Highway 1029, he collided with another truck that was coming across the intersection from the west, which was also attempting to make a left-hand turn in a southerly direction onto Highway 1029. The two trucks were apparently trying to turn at approximately the same time. From the damage that occurred to the two trucks, it seems as though the truck driven by Mr. Gee was attempting to travel through the intersection and turn behind the other truck, while the other truck was attempting to turn in front of the truck driven by Mr. Gee. In any event, a violent collision took place at approximately 7:15 p.m. and Mr. Gee was severely injured. Mr. Gee does not remember much about the accident due to the impact. The Bell Pest truck ended up in a ditch in the northeast corner of the intersection.

Deputy Dubach was the first to arrive at the scene at approximately 7:35 p.m. The deputy testified that Mr. Gee appeared to have a broken neck, and, that under the circumstances, his speech was fairly normal.

Officer Taylor arrived next at 7:40 p.m. The officer suspected alcohol involvement in the accident as there were empty and full beer cans found in the Bell Pest truck and the smell of alcohol on Mr. Gee. The ambulance arrived, and paramedics placed Mr. Gee in a neck collar for a broken neck. Mr. Gee was experiencing partial paralysis. He has since recovered somewhat, but Mr. Gee suffers and will continue to suffer from his condition as a result of the accident. Deputy Dubach went with the ambulance to the emergency room at St. Francis Hospital. Officer Taylor arrived around 9:00 p.m. to obtain a blood sample from Mr. Gee. Hospital personnel took the sample, which was later tested and found to have a blood alcohol content of approximately .25%.

What is at the heart of the issue is whether (1) Mr. Gee's visit to the Cumpton house was a deviation from his employment, and, at the time of the accident, the deviation had not ended, and (2) that Mr. Gee was so intoxicated that his accident cannot be said to have arisen out of and in the course and scope of his employment.

 In a worker's compensation case, this Court must review the record in the light most favorable to the Labor and Industrial Relation Commission's (Commission's) findings. *Swillum v. Empire Gas Transport, Inc.*, 698 S.W.2d 921, 925 (Mo. App.1985); *Nelson v. Consol. Housing Dev. and Mgmt. Co., Inc.*, 750 S.W.2d 144, 148–149 (Mo.App.1988). Our review is of the Commission's award and only when that award is not supported by substantial evidence or is clearly contrary to the overwhelming evidence will we disturb it. *Tate v. Southwestern Bell Telephone*, 715 S.W.2d 326, 328 (Mo.App.1986). The Commission is the sole judge of the credibility of the witnesses and this Court cannot substitute its view of the facts for those found by the Commission if the Commission's findings are supported by sufficient competent evidence. *Id.* Additionally, all doubt should be resolved in favor of the employee

and in favor of worker's compensation coverage, unless some element needed to validate his claim is lacking. *Id.* Keeping these principles firmly in mind, we now look at the award before us.

The Commission found that Mr. Gee was on a purely personal errand when he visited the Cumpton home and that he was still in the midst of his personal errand when the collision took place. The Commission stated that Mr. Gee's personal errand would not have ended until he was again traveling in a northerly direction on County Road 1029 (the road which would eventually, after catching Highway 92, take Mr. Gee back to Independence, Missouri). Mr. Gee contends that he went to the Cumpton residence in furtherance of business for Bell Pest and, therefore, was within the course and scope of his employment at the time of the accident. The Commission could, and did, conclude that Mr. Gee was on a personal errand to the Cumpton's, but erroneously decided when the errand came to an end. The errand ended when Mr. Gee began to drive the Bell Pest truck away from the Cumpton home.

A significant part of Mr. Gee's job was driving the Bell Pest truck to and from different job sites. Mr. Gee was driving the company truck on company business. He had, just two hours previous to the accident, secured payment on an account. He was bringing the check back to his employer at the time of the collision.

Analogous to the case at bar is *Tate v. Southwestern Bell Telephone Co., supra.* In *Tate,* the Southern District stated the general rule is that an injury arises in the course of a claimant's employment if the accident occurs within the period of employment at a place the employee may reasonably be, while he is in furtherance of the employer's business or performing activities incidental to employment. *Tate* at 328. Moreover, the court stated that because claimant's duties required him to drive a company vehicle, any deviation from the course of employment had terminated when he began driving the vehicle after finishing his personal errand.

*Tate* is consistent with similar, earlier cases dealing with salesmen, solicitors, and other workers whose duties involve driving where there is no fixed route or destination. This line of cases holds that an employee has returned to his respective course and scope of employment the moment the personal errand has been completed. *See Kinkead v. Management and Engineering Corporation,* 103 S.W.2d 545, 547 (Mo.App.1937), citing *Beem v. H.D. Lee Mercantile Co.,* 337 Mo. 114, 85 S.W.2d 441, 445 (1935); *Schulte v. Grand Union Tea & Coffee,* 43 S.W.2d 832, 835 (Mo.App. 1931). Thus, claimant returned to his course and scope of employment the moment he left the Cumpton residence and resumed the logical route back to Independence, Missouri. Mr. Gee was clearly on the direct route back to Bell Pest and thus within the course and scope of his employment. There was not sufficient competent evidence in the record to warrant the finding that Mr. Gee was not in the course and scope of his employment as Mr. Gee was at a place where he may have reasonably been while he was reasonably fulfilling the duties of his employment. *See Page v. Green,* 686 S.W.2d 528, 532 (Mo.App.1985).

The Commission also found that Mr. Gee was so intoxicated that his accident did not arise out of and in the course of his employment. For intoxication to bar claimant's recovery, there must be evidence that, at the time of injury, appellant was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment. *Haynes v. R.B. Rice, Div. of Sara Lee,* 783 S.W.2d 403, 406 (Mo.App.1989). The law in the area of intoxication defense has consistently held that mere evidence of a high blood alcohol content is insufficient to support a denial of a claim on the basis of intoxication. *See Coonce v. Farmer Ins. Exchange,* 228 S.W.2d 825 (Mo.App.1950); *McCue v. Studebaker Automotive Sales, Inc.,* 389 S.W.2d 408 (Mo.App.1965); *Begey v. Parkhill Trucking Co.,* 546 S.W.2d 529 (Mo.App.1977); *Page, supra.* To be denied compensation, claimant must be intoxicated to the point where his mind is a "total

blank" due to intoxication. *O'Neil v. Fred Evens Motor Sales Co.*, 160 S.W.2d 775, 779 (Mo.App.1942). Whether an employee was intoxicated to such an extent that he could not be engaged in the furtherance of his employer's business is a question of fact to be determined by the Commission. *O'Neil*, at 778–779. In reviewing the question of fact, we must consider whether upon the whole record and in looking at the evidence in the light most favorable to the Commission's findings, the Commission could have reached the result it did. *Swillum* at 925. There is not sufficient competent evidence on the record as a whole to support the Commission's holding that Mr. Gee was intoxicated to the extent that he was out of his course and scope of employment.

The uncontroverted evidence in the case at bar is that Mr. Gee was able to estimate a flea and termite eradication at the Craven residence between approximately 4:00 and 5:30 p.m. Mrs. Craven testified that he spoke normally, did not stagger or sway, nor did he appear physically impaired when he left her home. Mrs. Craven, who had known Mr. Gee for several years, testified that he acted in a normal manner. Mr. Mercer, owner of Bill Mercer's grocery store, saw Mr. Gee between approximately 5:30 and 6:30 in the evening, right before the accident. Mr. Mercer testified that Mr. Gee did not appear intoxicated. He stated that Mr. Gee looked normal, did nothing unusual, and did not slur his words. Mr. Cumpton, Mr. Gee's former employer, spoke with Mr. Gee on the telephone while Mr. Gee was at Bill Mercer's and testified that there was nothing unusual about Mr. Gee's speech.

After eating a pizza and having a beer, Mr. Gee left for the Cumpton residence and arrived there close to 7:00 p.m. Approximately fifteen minutes later, he was involved in the accident. Of the people who observed Mr. Gee in the critical time frame prior to the accident, not one indicated that Mr. Gee was so intoxicated that he was incapable of driving or performing his duties as a service technician.

Further, Deputy Dubach testified that Mr. Gee's speech was normal for a man with a broken neck. Mr. Gee himself testified to the events of the accident all the way up to the point where he hit his head on the windshield. If his mind at any point was a total blank, it is attributable to the injuries he sustained and not to his intoxication. Without anymore evidence other than the fact that Mr. Gee was intoxicated as a matter of law, it cannot be established that it was impossible for Mr. Gee to physically or mentally engage in his employment. For the three hours preceding his accident, appellant was able to drive, perform an estimate, and speak normally with at least three witnesses without appearing intoxicated. Nothing on the record before us indicates that it was impossible for him to work.

To borrow the words from Commissioner Fowler's dissent, "[T]he Commission has proceeded on a tangent with the obvious ill advised attempt to forge new law." In *Phillips v. Air Reduction Sales Co.*, 337 Mo. 587, 85 S.W.2d 551, 555 (1935), the Supreme Court was explicit when it stated: "Until the legislature sees fit to do so, we cannot deny compensation because of intoxication ..." Any change in the *Phillips* rule will have to come from the Supreme Court of Missouri or the legislature.[1] Mo. Const. Article V, § 2 (1945). Likewise, the Commission has no power to make new policy in this matter but must follow the *Phillips* rule.

■ The final point appellant raises is that the Commission erred in admitting and relying on the testimony of Dr. Thomas Fritzlen in that the testimony proffered was based on hearsay evidence, and in reaching his determination used speculation and conjecture. Dr. Fritzlen testified to the effects a .261% blood alcohol content (the percentage reported from the official Kansas lab report) would have on a person weighing approximately 155 pounds and

1. The legislature has seen fit to make some major revisions regarding injuries arising from alcohol and drug use which are to take effect August 28, 1990. These revisions, however, set no legal precedent for the case at bar.

stood 70 inches tall. This is approximately the same weight and height of Mr. Gee. Dr. Fritzlen based his analysis upon a gas chromatographic method of blood alcohol analysis. His calculation was based on the assumption that 70% of the total body weight of the average person is water. Based on this evidence and these assumptions, he further testified that it was his opinion that Mr. Gee had drank either 9.24 12–ounce cans of 4–8% beer or 8.8 12–ounce cans of 5% beer at the time of the accident. Dr. Fritzlen testified that a blood alcohol level of at least .25% would substantially affect one's motor skills and brain function. After a hypothetical was posed to him, Dr. Fritzlen opined he was reasonably certain that Mr. Gee's brain function at the time of the blood alcohol test would have impaired his ability to safely and properly operate a motor vehicle. He testified that Mr. Gee's brain function would have been impaired. He also testified, however, that his conclusion would be wrong if any of the figures supplied to him were wrong. He further testified that a person with this level of alcohol could move about, communicate, operate a motor vehicle for a while, play cards, and go through the exercise of their work duties.

The evidence in this case is clear. Three witnesses testified to the fact that just prior to the accident, Mr. Gee was perfectly able to perform an estimate which was part of his employment duties, to take a check from a customer, to communicate without slurring his speech, and to function normally. Not one of these three witnesses testified that Mr. Gee appeared to be intoxicated. Deputy Dubach testified that Mr. Gee's speech was normal for a man with a broken neck. Dr. Fritzlen testified upon cross-examination that a person with at least a .25% level of alcohol in his blood could move about, communicate, operate a motor vehicle for a while, play cards, and go through the exercise of their work duties.

The Supreme Court of Missouri stated, "We cannot deny compensation because of intoxication, at least unless it was shown that the degree of intoxication was such that the injury did not arise out of the employment because the employee could not have been engaged in it." *Phillips* 85 S.W.2d at 555. The evidence, as deduced herein, does not point to such a showing.

Bell Pest contends that the issue of Dr. Fritzlen's testimony is not properly before this court for review because Mr. Gee's objection to the testimony was not renewed before the Commission. Our review is only of the Commission's decision and not that of the administrative law judge. *Long v. City of Hannibal*, 670 S.W.2d 567, 570 (Mo.App.1984), citing *Conover v. Missouri State Highway Dept.*, 618 S.W.2d 470, 471 (Mo.App.1981). Mr. Gee filed a motion in limine in opposition to Dr. Fritzlen's testimony. The motion was to serve as a standing objection to the testimony of Dr. Fritzlen before the administrative law judge. This motion was overruled. This issue does not affect the final disposition of the case. Since our review is limited to the findings and conclusions of the Commission, we cannot review this issue as it was not addressed by the Commission.

By application of the rule in *Phillips*, a rule this court must apply because it emanated from the Missouri Supreme Court, the ruling by the Commission herein must be reversed. With the rule in *Phillips*, this court must conclude upon the evidence herein that the Commission ruling cannot stand. The ruling by the Commission is reversed and the cause remanded with instructions to the Commission that it enter an award affirming the findings and order of the Administrative Law Judge awarding benefits to appellant in conformity with Missouri Worker Compensation laws.

All concur.