George L. TURPIN and Ralph E. Eutsler,
Employees–Respondents,

v.

TURPIN ELECTRIC, INC., a/k/a Lynn's
Electric, Employer–Appellant,

and

Allied Mutual Insurance Company,
Insurer–Appellant.

Nos. 19942, 19943.

Missouri Court of Appeals,
Southern District,
Division One.

July 21, 1995.

Motion for Rehearing and Transfer to
Supreme Court Denied Aug. 14, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Carl E. Lippelman, Andereck, Evans, Milne, Peace & Baumhoer, L.L.C., Springfield, for appellant.

Robert W. Hill, Springfield, for respondents.

MONTGOMERY, Judge.

In this workers' compensation case, claimants George L. Turpin and Ralph E. Eutsler were injured in an automobile accident after leaving Pardners, a restaurant and bar in Nixa, Missouri. The administrative law judge (ALJ) found that their injuries were compensable. The Labor and Industrial Relations Commission (Commission) affirmed the award of the ALJ by a split decision. The employer (Lynn's Electric)[1] and its insurer appeal from the award in each case. The appeals are consolidated because the facts and issues are identical in each case.

In its two points relied on, the employer contends that the Commission erred in determining that the claimants' injuries "arose out of" and "in the course of" their employment. We agree and reverse the award.

In reviewing the Commission's decision this Court is limited to a determination of whether the findings are authorized by law and supported by competent and substantial evidence on the whole record. Mo. Const. art. V, § 18; § 287.495;[2] Julian v. Consumers Markets, Inc., 882 S.W.2d 274, 275 (Mo. App.1994). The evidence is examined in the light most favorable to the findings and decision of the Commission with acceptance of all reasonable inferences therefrom. Id. We may overturn the Commission's decision only if it is unsupported by substantial evidence or clearly contrary to the overwhelming weight of the evidence. Johnson v. City of

Duenweg Fire Dep't, 735 S.W.2d 364, 366 (Mo. banc 1987).

We defer to the Commission on issues involving credibility of witnesses and the weight to be given their testimony. Alexander v. D.L. Sitton Motor Lines, 851 S.W.2d 525, 527 (Mo. banc 1993). Our inquiry on questions of fact is limited to determining whether the Commission could have reasonably reached the result it did. Lawson v. Emerson Elec. Co., 833 S.W.2d 467, 471 (Mo. App.1992). We may not substitute our judgment on issues of fact for that of the Commission even if we would have made a different initial conclusion. Id.

Lynn's Electric is an electrical contractor. Turpin, Eutsler, and Mike Church were employees of Lynn's Electric on August 1, 1990. Greg McClease was a home builder, a customer of Lynn's Electric as of that date, and a good friend of Turpin's.

Turpin, Eutsler, and Church testified at the hearing before the ALJ. McClease's deposition was received into evidence. The only other testimony came from Mary Hayes, the owner of Pardners.

Mary Hayes testified that Turpin and Eutsler were regular customers and that they often ate and drank in her establishment while going over business matters. She remembered that Turpin, Eutsler, Church, and McClease came to Pardners for dinner on August 1, 1990, arriving between 6:30 to 7:00 p.m. She served them food, mixed drinks and beer. The four men had notebooks and a calculator on their table and appeared to conduct business while having dinner. According to Hayes, the four men left Pardners "close to the time that we quit serving food, around ten." She added that the men never left and came back to Pardners that evening.

Turpin, Eutsler, and Church all testified that they were working on a bid[3] while they ate and drank at Pardners. Their testimony

---

1. The record indicates that the employer is a corporation which is "owned" by the claimant, George L. Turpin.

2. Statutory references are to RSMo 1986 unless otherwise indicated.

3. Church testified that "[w]e were bidding the big Reeds Spring school job—heck a set of prints, nine miles deep in pages." According to Church the bid was due to be made within six days. Church conceded that the "nine mile deep" blueprint was not taken to Pardners because the light was too dim to see it.

indicated they arrived for dinner later than Mary Hayes stated. They all denied leaving Pardners[4] and going to another bar but all agreed that the accident occurred after midnight on the way back to Lynn's Electric, which is about a mile and a half from Pardners. These three witnesses also testified they intended to continue their work upon their return from Pardners because the "shop" was not locked and the alarm was not set. An "estimating area" is located in the shop where bids are prepared.

McClease's testimony differed dramatically from his friends'. He was vague about the extent of the business discussed during the evening. When asked what happened on the evening in question, McClease said:

> I was at Lynn Turpin's office in Nixa at approximately somewhere between 5:00 and 6:30, somewhere around in there. We were looking at some plans, we were talking. We, I believe, drank a couple, two or three beers apiece. I wouldn't swear to that. But I know that I drank a couple. And we looked at plans. Later, we went to Pardners restaurant and bar in Nixa, had a few drinks. Went to Springfield to Graffiti's.[5] Wasn't there very long, left, went to Pardners again, had a few more drinks. And sometime left there and started back towards Lynn's office and had a wreck at M and 14 in Nixa.

McClease was asked if he remembered how long he was at Pardners the second time. He replied, "Not exactly, because I got pretty drunk.... It couldn't have been more than an hour or so...." Finally, McClease said that he had no memory of the drive from Pardners toward the employer's premises.

The accident occurred at 12:50 a.m. on August 2, 1990, while McClease was driving his own vehicle, as he had done all evening. Turpin, Eutsler, and Church were passengers. McClease was charged with driving while intoxicated after the accident investigation.

Both claimants were injured in the accident and were taken to Cox Medical Center in Springfield. Tests performed at the hospital show that each claimant had almost nineteen-hundredths of one percent blood alcohol content.[6] Cox Medical Center records show that Eutsler informed hospital personnel that he did not remember the accident because he was asleep when it happened.

The Commission affirmed the award of the ALJ and incorporated his findings by reference in its final award. Thus, the Commission made the following pertinent findings:

(1) The three employees of Lynn's Electric and Greg McClease went to Pardners, ate dinner, drank beer, and discussed business during the evening.

(2) "If the four gentlemen had arrived at the eating establishment and during a reasonable period of time discussed business, ate supper and drank a few beers and then returned back to the employer's premises when the accident occurred, there would be no question that the accident arose out of and in the course of employment. A question rises, however, that if during the course of the evening (because of the drinking and the non-discussion of business) they deviated from their employment and entered into a frolic of their own. This might have been the case, but, however, once it was time to return *back* to the employer's premises, if they had been on a frolic of their own, they would have reentered the sphere of their employment when they drove from the eating establishment in a direct path to return to the employer's premises."

(3) "Mrs. Hayes testified that the four gentlemen arrived at a time earlier than testified to by the employees and Mr. McClease. She testified that they left her establishment about ten p.m. (presumably

---

4. Turpin admitted that he gave a statement to an insurance adjuster five or six days after the accident which indicated that the group had gone to Graffiti's on the night in question.

5. Graffiti's is a bar in Springfield, Missouri.

6. Under § 577.037, RSMo 1994, if a chemical analysis shows that a person charged with driving while intoxicated has a blood alcohol content of ten-hundredths of one percent or more by weight of alcohol in his blood, that fact is prima facie evidence of intoxication at the time the specimen was taken.

to go to Springfield to visit a local drinking establishment). The only evidence contained in the record is that if they went to Springfield, they returned back to the eating establishment in question for a period of time. They left the eating establishment around midnight and were en route *back* to the employer's premises (on a direct path) when the accident in question occurred."

(4) "[W]hen the employee[s] ventured from the eating establishment to travel to Springfield, Missouri, [they] left the sphere of [their] employment and [were] on a purely personal venture. However, after the employee[s] returned back to the eating establishment (a point at which [they] left the sphere of [their] employment) [they] reentered the sphere of employment when [they] left the establishment and [were] en route on a direct path *back* to the employer's premises."

As noted, the Commission passes on the credibility of witnesses. The findings indicate that the Commission believed part of Mary Hayes' testimony concerning the claimants' activity at Pardners and their time of arrival and departure. The Commission also believed McClease's testimony concerning the trip to Graffiti's in Springfield, Missouri, as opposed to the claimants' contrary testimony. Notably, the Commission made no findings that claimants discussed or transacted any business after returning to Pardners from Springfield.

 The Commission may disbelieve testimony of a witness even if no contradictory evidence is presented. *Causey v. McCord*, 774 S.W.2d 898, 899 (Mo.App.1989). Acceptance or rejection of part or all of a witness's testimony by the Commission cannot be disturbed on review, unless its acceptance or rejection is against the overwhelming weight of the evidence. *Id.* Given the Commission's determination that part or all of the Hayes and McClease testimony was credible, we must accept that evidence as true. *See Montgomery v. Missouri Dep't of Corrections and Human Resources*, 849 S.W.2d 267, 271 (Mo.App.1993).

 The issue here is whether the claimants' injuries arose out of and in the course of their employment. The Commission decided this issue in the affirmative based upon a finding that claimants reentered their sphere of employment when they left Pardners on a direct route back to the employer's premises.

 To be compensable, a claimant's injury must both "arise out of" and "in the course of" employment. § 287.120.1. Both of these two separate tests must be met before an employee is entitled to compensation. *Ford v. Bi–State Dev. Agency*, 677 S.W.2d 899, 901 (Mo.App.1984).

 An injury arises "out of" employment if it is a natural and reasonable incident of the employment and is the rational consequence of some hazard connected with the employment. *Page v. Green*, 686 S.W.2d 528, 532 (Mo.App.1985). An injury is "in the course of" the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment. *Id.* Because we determine there is not sufficient competent evidence in the record to support a finding that claimants' injuries arose in the course of their employment, a discussion of whether the injuries arose out of claimants' employment is unnecessary.

In *Blatter v. Missouri Dep't of Social Serv.*, 655 S.W.2d 819 (Mo.App.1983), this Court said:

> Missouri cases have emphasized that it is the nature of the employee's activity at the time of the injury itself which governs the issue of compensability. *Griffin v. Doss*, 411 S.W.2d 649 (Mo.App.1967); *Kunce v. Junge Baking Company*, 432 S.W.2d 602, 610 (Mo.App.1968). "It is not sufficient that the employment may simply have furnished an *occasion* for an injury from some unconnected source." (Emphasis in original.) *Kelley v. Sohio Chemical Company*, 392 S.W.2d 255, 257 (Mo. banc 1965).... It is not sufficient that "the victim's employment caused him to be at the place where it happened." *Liebman v.*

*Colonial Baking Company,* 391 S.W.2d 948, 952 (Mo.App.1965).

A claim is not compensable if, at the time of the injury, the employee is engaged in "pleasure purely his own." *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625, 628 (Mo.1969).

*Id.* at 823.

The evidence shows that the accident happened at 12:50 a.m. Mary Hayes said that the four men arrived at Pardners between 6:30 and 7 p.m. the previous evening. McClease testified he started drinking beer with Turpin even prior to 6:30 p.m. This evidence establishes that Turpin had been drinking for approximately seven hours before the accident and that Eutsler had been drinking most of that time.

The four men left Pardners at approximately 10 p.m. and frequented another bar in Springfield. They returned to Pardners and continued drinking prior to the accident. McClease said he was "pretty drunk" when they left Pardners the second time and that he had no memory of the trip from Pardners to the accident location. Eutsler told hospital personnel that he was asleep at the time of the accident, although he denied being asleep when questioned later. The blood alcohol content of each claimant indicates that they, like McClease, were "pretty drunk" at the time of the accident.[7]

This evidence does not support a finding that claimants were injured during a period of employment, while fulfilling a duty of employment, at a place where the employee might reasonably be expected to be. The business conducted, at least earlier in the evening, was the preparation of an electrical bid for a building project. Such a bid obviously requires precise calculations. No employer would expect or require an employee to prepare a complicated electrical bid while drinking and bar hopping during the midnight hours.

Competent and substantial evidence does support the Commission's finding that claimants deviated from their employment during the evening and entered into a frolic of their own. That frolic clearly commenced at least by 10 p.m. when the men left Pardners for the first time. However, contrary to the Commission's findings, no competent and substantial evidence points to claimants' reentry into "the sphere of their employment" before their frolic ended.

Even if, as claimants contend, they intended to return to employer's premises and continue working, their claims are not compensable. The evidence shows that claimants' activities were purely personal at the time of the accident. After 10 p.m. and prior to the accident claimants had been bar hopping and drinking, activities unassociated with preparing a bid. The record is barren of any competent and substantial evidence that claimants engaged in bid preparations after 10 p.m. At most, the evidence favorable to claimants indicates they were going back to work at the time of the accident.

The "going and coming" rule generally insulates an employer from liability for an employee's injury sustained while going to or coming from work, because such injuries do not arise out of and in the course of employment. *Davis v. McDonnell Douglas,* 868 S.W.2d 170, 171 (Mo.App.1994).

Claimants rely on *Blatter* where the employee, Blatter, was killed as he walked across Glenstone Avenue in Springfield, Missouri, from Wild Bill's, a tavern, to the Drury Inn, a motel where he was staying. Blatter, an employee of the Missouri Division of Family Services, worked in Waynesville, Missouri, and was required to attend a two-day training session at the Drury Inn in Springfield. His employer paid for his food, lodging, and travel expenses. As customarily done at most training sessions, Blatter and others were invited to attend an "informal evening session" at Wild Bill's for socializing and for discussion of work-related problems.

---

7. We recognize that mere evidence of a high blood alcohol content is insufficient to support a denial of a claim on the basis of intoxication. *Gee v. Bell Pest Control,* 795 S.W.2d 532, 536–37 (Mo.App.1990). We refer to claimants' state of intoxication in this opinion only as evidence that they were drinking and bar hopping while engaged in their own pleasures rather than tending to the employer's business.

Blatter was not intoxicated as he left the evening session although he drank some beer while there.

The employer contended on appeal that the accident did not arise out of and in the course of Blatter's employment. This Court affirmed the award in favor of the widow and minor child after noting that the case was very close and that "resolution of the issue has not been free of difficulty." 655 S.W.2d at 826. We found it significant to our determination that (1) Blatter was required to attend the convention in Springfield; (2) the evening session was a "settled practice" known to the employer; (3) attendance at the evening session, although not mandatory, was repeatedly encouraged by the employer; and (4) work-related discussions occurred at the evening session. *Id.* at 826–27.

■ In affirming the award, this Court relied on the mutual benefit rule. This rule allows compensation for an injury suffered by an employee while performing an act for the employer and the employee if some advantage to the employer results from the employee's conduct and if the employee's acts cannot be regarded as purely personal and wholly unrelated to the employment. *Id.* at 823. We determined that the record supported the finding that some benefit, admittedly slight, was derived by the employer from the evening session attended by Blatter.

The facts here are unlike those in *Blatter.* For instance, the employer did not require claimants to attend a bid preparation session at Pardners and claimants were not on an expense paid out-of-town business trip. Furthermore, the slight benefit found in favor of Blatter's employer is missing here. Under any reasonable view of the evidence, McClease and the claimants were drinking and bar hopping after 10 p.m., not preparing a detailed electrical bid which would be of benefit to the employer. As noted in *Blatter,* "[t]he 'concurrent benefit' principle cannot be applied without limitation. Eventually, the indirect benefit to the employer becomes so tenuous as to be imperceptible. *Elliott v. Darby,* 382 S.W.2d 70, 75–76 (Mo.App.1964)." 655 S.W.2d at 824. If claimants' conduct benefitted the employer earlier in the eve-

ning of August 1, 1990, the benefit was clearly imperceptible well prior to 12:50 a.m. on August 2, 1990. The mutual benefit doctrine does not aid claimants.

■ The claimants also argue that the dual-purpose doctrine applies to their case. In *Parsons v. Kay's Home Cooking, Inc.,* 830 S.W.2d 46 (Mo.App.1992), this Court said:

> It is fundamental that for an accident to be compensable under the dual-purpose doctrine, an employee must be acting not only for his own purpose but for the purpose of his employer when the accident occurs. The doctrine does not apply when an employee deviates from an employer's business so that at the time of the accident he is serving only his own purpose.

*Id.* at 48. Here, we have seen that claimants were serving only their own purposes at the time of the accident. The doctrine does not apply in that situation.

■ Finally, claimants say that if they were on a personal venture, it came to an end when they were on a direct route back to employer's premises. They rely on *Gee v. Bell Pest Control,* 795 S.W.2d 532 (Mo.App. 1990). Like other cases dealing with salespeople and solicitors who drive where there is no fixed route or destination, the employee's job in *Gee* was driving the company truck on company business (pest control). He deviated from his trip back to his employer's premises by going to a friend's home on a personal errand. After completing his personal errand, the employee was involved in a motor vehicle accident. In deciding that the injuries were compensable, the court said:

> Thus, claimant returned to his course and scope of employment the moment he left the Cumpton residence and resumed the logical route back to Independence, Missouri. Mr. Gee was clearly on the direct route back to Bell Pest and thus within the course and scope of his employment. There was not sufficient competent evidence in the record to warrant the finding that Mr. Gee was not in the course and scope of his employment as Mr. Gee was at a place where he may have reasonably been while he was reasonably fulfilling the

duties of his employment. *See Page v. Green,* 686 S.W.2d 528, 532 (Mo.App.1985). *Id.* at 536.

*Gee* is factually distinguishable from the instant case in that at the time of the accident claimants were not driving a company vehicle which had been used in company business before and after the deviation. They were riding with a "pretty drunk" friend who was operating his own vehicle as he had done all evening long. Furthermore, claimants' employment, unlike Mr. Gee's, did not require them to work on bids away from the employer's premises. Here, the employer's premises had a place for bid preparations. Unlike Mr. Gee, claimants were not at a place reasonably required by their employment while they were reasonably fulfilling the duties of their employment, even though they were returning to the employer's premises at the time of the accident. Claimants were simply returning to those premises either to obtain transportation home or possibly to work after abandoning their earlier work efforts in favor of drinking and bar hopping. In other words, Mr. Gee returned to his sphere of employment after a deviation but claimants did not.

We hold that the Commission's award is not supported by sufficient and competent evidence. The award is reversed.

FLANIGAN, J., concurs.

SHRUM, C.J., dissents and files dissenting opinion.

SHRUM, Chief Judge, dissenting.

I respectfully dissent. Section 287.460.1, RSMo 1994, mandates that an award in a contested workers' compensation case must be accompanied by findings of fact, *Michler v. Krey Packing Co.,* 253 S.W.2d 136, 142 (Mo. banc 1952), and one of the questions on appeal, as provided by § 287.495.1(3), is whether the facts found by the Commission support the award. *Id.* It is now settled law that these statutory provisions, i.e. §§ 287.460.1 and 287.495.1(3), "contemplate *an unequivocal affirmative finding of what*

the facts are." *Michler* at 142. *See Coleman v. Hercules Powder Co.,* 284 S.W.2d 32, 34 (Mo.App.1955).

> "[F]indings of fact [by the Commission in a workers' compensation case] should be sufficient to show how the controlling issues have been decided. Otherwise, the reviewing court will be unable to know what the Commission has really determined in order that it may know what to review, and whether or not correct rules of law have been applied to facts which could properly be found on the particular record."

*Groce v. Pyle,* 315 S.W.2d 482, 490–91[8] (Mo.App.1958).

> " 'Intelligent judicial review of a [workers' compensation case] is possible only if the deciding officer has made findings of fact which show the actual grounds of decision,—findings sufficiently specific so that the reviewing court may judge, first, whether the findings themselves are supported by the evidence in the record of the [workers' compensation] hearing and, second, whether the facts so found are legally sufficient to support the determination.' "

*Michler,* 253 S.W.2d at 143.

In my opinion, the Commission's findings here are insufficient to comply with the statutory requirements. I quote verbatim that part of the Commission's findings which I view as fatally flawed.[1]

[1] "The major issue presented at this hearing is whether employee's injury arose out of and in the course of his employment.

[2] Mr. Eutsler, Mr. Turpin and Mr. Church (employees of Turpin's Electric) and Mr. McClease (a business associate of Mr. Turpin) testified that they were at the employer's premises prior to the incident in question. During that time they were discussing business matters. *At some point in the evening the four men left the employer's premises and went to a local dining establishment. The consensus of testimony was that the four gentlemen discussed business during the evening. They testified that they ate dinner and drank*

---

1. In quoting from the findings of fact and rulings of law, I have added paragraph numbers for purposes of identification.

beer throughout the night. They stayed at the establishment until approximately midnight. At that time they left the establishment to venture <u>back</u> to the employer's premises when the accident in question occurred.

[3A] If the four gentlemen had arrived at the eating establishment and during a reasonable period of time discussed business, ate supper and drank a few beers and then returned back to the employer's premises when the accident occurred, there would be no question that the accident arose out of and in the course of employment. [3B] A question rises, however, that if during the course of the evening (because of the drinking and the non-discussion of business) they deviated from their employment and entered into a frolic of their own. This might have been the case, but, however, once it was time to return <u>back</u> to the employer's premises, if they had been on frolic of their own, they would have reentered the sphere of their employment when they drove from the eating establishment in a direct path to return to the employer's premises.

[4] Based on the above evidence, it is my opinion that the employee's injuries did arise out of and in the course of his employment.

[5] An alternative finding is needed, however, based on the testimony of Mary Hayes (owner of the eating establishment in question). Ms. Hayes testified that the four gentlemen arrived at a time earlier than testified to by the employees and Mr. McClease. She testified that they left her establishment about ten p.m. (presumably to go to Springfield to visit a local drinking establishment). The only evidence contained in the record is that if they went to Springfield, they returned back to the eating establishment in question for a period of time. They left the eating establishment around midnight and were en route <u>back</u> to the employer's premises (on a direct path) when the accident in question occurred. . . .

[6] If an alternative finding is needed, it is my opinion that when the employee ventured from the eating ... establishment to travel to Springfield, Missouri, he left the sphere of his employment and was on a purely personal venture. However, after the employee returned back to the eating establishment (a point at which he left the sphere of his employment) he reentered the sphere of employment when he left the establishment and was en route on a direct path <u>back</u> to the employer's premises." (Underlined emphasis in original; italics mine.)

The majority has this to say about the Commission's findings:

"Competent and substantial evidence does support the Commission's finding that claimants deviated from their employment during the evening and entered into a frolic of their own. That frolic clearly commenced at least by 10 p.m. when the men left Pardners for the first time."

I disagree. In my view, the majority opinion misstates what the Commission found. Arguably, the Commission found the ultimate constitutive facts to be those emphasized in paragraph [2] above, and based solely on those facts, concluded in paragraph [4] that "the employee's injuries did arise out of and in the course of his employment."

Apparently paragraphs [3B], [5], and [6] are the source of the majority's belief that the Commission found that claimants deviated from their employment and entered into a frolic of their own. I cannot from reading those paragraphs reach that conclusion. Paragraph [5] merely recounts testimony of Mary Hayes without finding it to be true. Paragraphs [3B] and [6] hypothesize that a frolic and deviation might have occurred—without making that finding—and then conclude hypothetically that *if* deviation occurred and *if* on a frolic, nevertheless claimants returned to the sphere of their employment and were en route on a direct path to the employer's premises when the accident occurred.

On the authority of *Michler*, 253 S.W.2d 136, I would reverse and remand with directions to the Commission to make unequivocal affirmative findings of fact.