**Gene DECKER, Deceased, Margaret Decker, Dependent, Claimant/Appellant,**

v.

**NATIONAL ACCOUNTS PAYABLE AUDITORS, Employer/Respondent,**

and

**Missouri Second Injury Fund, Respondent.**

No. 22315.

Missouri Court of Appeals, Southern District, Division One.

March 4, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied March 25, 1999.

Application for Transfer Denied April 27, 1999.

■■■■■■■■■■■■■■■■■■■■■■■

Leah Brown Burkhead, Mark & Burkhead, Mission, KS, Christina R. Schoeppey, Eppright & Schoeppey, Kansas City, for Appellant.

James G. Thomeczek, Robert J. Thomeczek, Thomeczek Law Firm, St. Louis, for Respondent National Accounts Payable.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for Respondent Second Injury Fund.

JOHN E. PARRISH, Judge.

Margaret Decker (claimant), surviving spouse of Gene Decker, deceased, appeals the denial of her claim for compensation for the death of her husband. This court affirms.

Mr. Decker was killed December 8, 1991, when his plane crashed on take-off from the Camdenton Memorial Airport. His destination was St. Louis, Missouri, where he planned to meet with Loren Forrester, chairman of National Accounts Payable Auditors, Inc. (NAPA).[1]

The business in which NAPA engaged was auditing records of client companies to determine if they were due refunds from vendors. NAPA was a Nevada corporation. The business operations were run from Mr. Forrester's residence in St. Louis.

Mr. Decker and claimant performed audit work for clients procured by NAPA. Mr. Decker was termed a lead auditor. He traveled between job sites making daily reports on audits and auditors. He prepared monthly billings on audits and solicited new business. Mr. Decker was also a stockholder in NAPA. He owned 8% of its stock. Mr. Forrester owned 28%. Robert Clark owned 30%.

In 1990 all NAPA auditors were required to incorporate individually. They signed contracts with NAPA as independent contractors. Mr. Decker and claimant formed Fireside Financial Services (FFS). After it was incorporated, NAPA paid FFS for the work Mr. Decker and claimant performed on behalf of NAPA. Mr. Decker's and claimant's compensation was paid by FFS.

On December 6, 1991, Loren Forrester met with John Cook of J.C. Ventures to discuss a possible sale of NAPA to J.C. Ventures. After the meeting, Mr. Forrester called Robert Clark and suggested they discuss the potential sale of NAPA with Mr. Decker. Mr. Forrester asked Mr. Clark to set up a meeting for December 8 between the two of them and Mr. Decker in St. Louis to discuss the offer from J.C. Ventures. Mr. Clark called Mr. Decker and asked him to attend a meeting in St. Louis. Mr. Decker asked about the topic of the meeting. Mr. Clark told him he would be pleasantly surprised. He told Mr. Decker it would be a meeting of stockholders.

Claimant sought compensation from NAPA under the workers' compensation act for Mr. Decker's death. NAPA denied Mr. Decker was its employee. Its answer asserted Mr. Decker was a stockholder; that his "death could not have arisen out of and in the course of his employment (i.e., at the time of the crash, he was not on any employment-related business)." Claimant also sought recovery from the Second Injury Fund because NAPA did not have workers' compensation insurance. The answer of the custodian of the Second Injury Fund (the custodian) denied claimant's allegations on the grounds that the custodian was without knowledge or information sufficient to form a belief as to the truth of the statements in the claim.

The Labor and Industrial Relations Commission (the commission) awarded no

---

1. Loren Forrester was chairman, president and treasurer of NAPA.

compensation. It found that Mr. Decker's death did not arise out of and in the course of employment with NAPA. The commission adopted the award and decision of the administrative law judge. It includes the finding:

> The injury must occur while the employee was engaged in an activity that grew out of or had some direct relation to the details of the employee's work. *Turpin vs. Turpin Electric, Inc.*, 904 S.W.2d 539 (Mo.App.1995). Here the sole purpose was an informal meeting among three stockholders to discuss purchase of NAPA by JC Ventures, Inc.

### Claimant's Brief

The custodian filed a motion to dismiss the appeal because claimant's brief does not comply with Rule 84.04(c) and (d) as it existed at the time the brief was filed.[2] The applicable provisions, as they existed at the time of filing of claimant's brief, provide:

. . .

(c) **Statement of Facts**. The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. . . .

(d) **Points Relied On**. The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, . . . .

The custodian points out that claimant's statement of facts is one page. He suggests it omits considerable facts that are favorable to the commission's decision; that it, therefore, does not comply with Rule 84.04(c) in that it does not fairly state the facts in the case.

Claimant's statement of facts recites that Mr. Decker died in a private plane crash upon take-off from the Camdenton Airport; that he had been en route to St. Louis to attend a meeting at the NAPA office at its president's residence; that Mr. Decker had been "hired" as a lead auditor for NAPA in 1988 and that he was a minority stockholder. The statement relates that Mr. Decker had used his private plane and commercial airlines for NAPA business previously; that he had been reimbursed by NAPA for plane expenses in the past. Nothing in the statement alludes to any evidence that the purpose of the trip was to attend a meeting of some of the NAPA stockholders.

■ "The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case." *Kent v. Charlie Chicken, II, Inc.*, 972 S.W.2d 513, 515 (Mo.App.1998). Arguably, claimant's statement of facts does not state a complete and unbiased view of the evidence in the case. It includes none of the evidence on which the commission relied in finding the sole purpose of Mr. Decker's planned trip to St. Louis was to attend a meeting among three stockholders of NAPA. If this were the sole complaint concerning compliance of claimant's brief's with Rule 84.04, it would likely be overlooked. It is not the only deficiency. Claimant's point relied on does not comply with requirements of Rule 84.04(d). The point relied on states:

> The Commission's finding Gene Decker was not in the course and scope of his employment while traveling to a meeting in St. Louis, Missouri is not based upon sufficient competent evidence. Further, the Commission's findings of fact do not warrant the award.

■ In essence, the point relied on contends the commission's decision was against the weight of the evidence without explaining wherein and why that is so. *See Crowe v. Clairday*, 893 S.W.2d 400,

---

**2.** Claimant's brief was filed July 17, 1998. The applicable rules are Missouri Rules of

Court (1998).

402 (Mo.App.1995). A point relied on must include: (1) a statement of the action the party appealing contends was erroneous; (2) a statement that identifies why the ruling was erroneous; and, (3) a statement that informs the appellate court wherein the evidence, the lack of evidence, or other matters in the record support the result the appealing party contends should have occurred. *Id.* Claimant's point does not comply with requirements of Rule 84.04(d).[3] It preserves nothing for appellate review. *In Interest of J.L.C.,* 844 S.W.2d 123, 126 (Mo.App.1992).

■ Nevertheless, this court, as permitted by Rule 84.13(c), will look to the argument portion of the brief to determine if there was plain error affecting substantial rights which, though not preserved, resulted in manifest injustice or miscarriage of justice. *Coale v. Hilles,* 976 S.W.2d 61, 65 (Mo.App.1998). The motion to dismiss the appeal is denied.

*Purpose of the Planned Trip to St. Louis and this Court's Scope of Review*

This court's review of the commission's award is a two-step process. The record is examined, considering the evidence adduced together with all reasonable inferences that may be drawn therefrom in the light most favorable to the findings and the award, to determine if the findings and award are supported by substantial evidence. If so, the record is reviewed to determine if the findings and award, even though supported by some competent and substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence that was before the commission.

*Bridges v. Reliable Chevrolet, Inc.,* 940 S.W.2d 51, 53 (Mo.App.1997), *citing Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App.1995).

**3.** Neither would claimant's point satisfy the current version of Rule 84.04(d). It does not explain in summary fashion why, in the context of the case, the legal basis on which

■ The commission's denial of the claim for compensation was based on its determination that the sole purpose of Mr. Decker's planned trip to St. Louis "was an informal meeting among three stockholders to discuss purchase of NAPA by JC Ventures, Inc." The first inquiry is whether that determination was supported by substantial evidence.

Robert J. Clark was the person who arranged for Mr. Decker to go to St. Louis for the planned meeting. He did so upon Mr. Forrester's request. Mr. Clark explained, "Loren [Forrester] called me and told me that he had an offer from J.C. Ventures to purchase the company, and he asked me to call Mr. Decker and set up a stockholders meeting to discuss the possible sale of the company." He testified that he called Mr. Decker and told him about the meeting; that it would be a meeting of stockholders.

Mr. Clark was questioned extensively concerning the information he did and did not convey to Mr. Decker concerning the purpose of the meeting. He was asked the following questions and gave the following answers:

Q. And you stated that you told [Mr. Decker] of the meeting of stockholders. Are you certain that you used the word "stockholders" with [Mr. Decker]?

A. Yes, sir.

Q. Was the purpose of the meeting to discuss the writing of claims?

A. No, sir.

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to discuss the writing of claims?

A. No, sir.

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to discuss daily reports?

A. No, sir.

claimant relies in claiming error warrants reversal. *See* Rule 84.04(d)(2)(C), Missouri Rules of Court (1999).

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to discuss computer reports?

A. No, sir.

Q. Did you discuss – did you tell [Mr. Decker] that the purpose of the meeting was to discuss how the auditors were performing on the job down in Arkansas?

A. No, sir.

Q. Or anywhere for that matter.

A. No. That we were going to discuss auditors, no.

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to discuss billings?

A. No, sir.

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to oversee audits?

A. No, sir.

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to discuss some alleged problems with the company?

A. No, sir.

Q. Did you tell [Mr. Decker] that the purpose of the meeting was to solicit new clients?

A. No, sir.

Q. To your knowledge, was the only purpose of the meeting to discuss the offer that was received from J.C. Ventures, Incorporated, to buy NAPA?

A. Yes, sir.

Loren Forrester testified that he had a meeting planned in St. Louis with Gene Decker on December 8, 1991. Mr. Forrester was asked why he asked Mr. Decker to come to St. Louis for a meeting. He answered, "He's a stockholder." He testified that he received an offer from J.C. Ventures, Inc., on December 6, 1991, to purchase NAPA; that he talked to Mr. Clark about the offer, and he thought Mr. Clark, Mr. Decker and he should discuss the offer because they "represented two-thirds of the shares" in NAPA.

Mr. Forrester testified that Mr. Decker called him the morning of December 8 and told him he would be in St. Louis about 2:00 p.m. for the meeting. He said that was the extent of his conversation with Mr. Decker. He was asked, "What was the purpose of that meeting?" He answered, "To decide whether to ask [the representative of J.C. Ventures, Inc.] for a better offer or to reject this completely."

The commission's finding that the trip on which Mr. Decker had embarked when he was killed was for the sole purpose of attending an informal meeting among three stockholders, of which he was one, to discuss the potential purchase of NAPA by J.C. Ventures, Inc., is supported by substantial evidence. This court further notes that the commission relied extensively on the testimony of Robert J. Clark; that it deemed him to have been straightforward in his answers and observed he had no dollar interest in the outcome of the case in that he sold his NAPA stock prior to the evidentiary hearing held before the administrative law judge who initially heard the case and was protected by a hold-harmless agreement.

■ This court defers to the commission on issues involving credibility of witnesses and the weight given to their testimony. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993). Inquiry on questions of fact is limited to a determination of whether the commission could have reasonably reached the result it did. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 471 (Mo.App. 1992). Adhering to these standards, this court concludes that the commission's finding was not clearly contrary to the overwhelming weight of the evidence.

Claimant relies, primarily, on two cases in arguing the award should be reversed. Her first argument is that the case on which the commission relied in stating the proposition that for an injury to be compensable it must occur when an employee was engaged in an activity growing out of

or having some direct relation to the employee's work, *Turpin v. Turpin Electric, Inc.,* 904 S.W.2d 539 (Mo.App.1995), was not factually similar to the circumstances surrounding Mr. Decker's death. Her second argument is that the meeting to discuss the sale of NAPA stock would not have been for the sole benefit of Mr. Decker's interest as a stockholder; that such a sale would have been beneficial to both the company and Mr. Decker. Claimant relies on the rationale of *Blatter v. Missouri Dept. of Social Services,* 655 S.W.2d 819 (Mo.App.1983), for the second argument. This court finds neither argument persuasive.

The commission did not rely on or cite *Turpin* in support of its factual determination. It cited *Turpin* for the principle that an injury not related to an employee's work-related duties is not compensable as a workers' compensation claim. The differences in the factual situation in *Turpin* and the factual situation in this case are of no assistance to claimant.

Claimant's reliance on *Blatter* is based on the following language:

> On the other hand, "[a]n injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable, for when some advantage to the employer results from the employee's conduct, his act cannot be regarded as purely personal and wholly unrelated to the employment. Accordingly an injury resulting from such an act arises out of and in the course of the employment; and this rule is applicable even though the advantage to the employer is slight." *Wamhoff v. Wagner Electric Corporation,* 354 Mo. 711, 190 S.W.2d 915, 919 (Mo.banc 1945). To similar effect see *Snowden v. Orscheln Brothers Truck Lines,* 446 S.W.2d 494, 496–497 (Mo. App.1969).

655 S.W.2d at 823–24. She argues, "The sale of NAPA cannot rationally be considered 'solely' beneficial to Mr. Decker given his limited financial interest even if some-

how he discovered the true nature of the meeting.... This injury is compensable under ... *Blatter* because of the benefit of the sale of NAPA would have been to both the company and Mr. Decker."

Claimant fails to recognize the differences in a stockholder's relationship to a corporation and an employee's relationship. A corporation is an artificial being, a creature of statute. *U.S. Cent. Underwriters v. Hutchings,* 952 S.W.2d 723, 725 (Mo. App.1997); *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83, 87 (Mo.App. 1981). It functions within the authority of the laws under which it was created and the terms of its articles of incorporation and by-laws. A stockholder is an owner of an interest in that corporation. That ownership does not directly affect the day-to-day operations of the corporation. The daily activities of a corporation are controlled and managed by the board of directors, not the stockholders. *Leggett v. Missouri State Life Ins. Co.,* 342 S.W.2d 833, 850–51 (Mo. banc 1960). *See* § 351.310, RSMo 1994. Mr. Decker was not a member of the board of directors.

Claimant's brief and the record on appeal do not suggest how a meeting between stockholders held to ascertain how they would respond to an offer to purchase the corporation could be perceived to serve any purpose other than for the stockholders to attempt to maximize the proceeds they might obtain if their shares of stock were sold (or retired upon a sale of corporate assets). This court fails to perceive how Mr. Decker's travels for the purpose of meeting with fellow stockholders of NAPA to discuss a pending offer to buy the corporation could be construed to have served the advantage of the corporation. The evidence supports the commission's determination that the travels were for his personal benefit as a NAPA stockholder. The commission's determination that the evidence did not support Mr. Decker's travels were undertaken for any purpose incidental to employment by NAPA – if indeed he was an employee of the corpora-

tion, an issue not addressed by the commission in disposing of the claim that is the subject of this appeal – is not contrary to the overwhelming weight of the evidence. This court finds no error, plain or otherwise. The award denying compensation is affirmed.

PREWITT, P.J., and CROW, J., concur.